EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Alexandra M. Andino Torres | Certiorari |
| Ex-Parte | 2000 TSPR 164 |

Número del Caso: CC-1997-0639

Fecha: 3/noviembre/2000

Tribunal de Circuito de Apelaciones: Circuito Regional III

Juez Ponente: Hon. Igrí Rivera de Martínez

Abogado de la Parte Peticionaria:

Lcdo. Luis Arturo Sánchez Rodríguez

Oficina del Procurador General:

Lcda. Sylvia Cancio Bigas
Procuradora General Auxiliar

Materia: Cambio de Nombre

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Alexandra M. Andino Torres

|  | | |
|---|---|---|
| Ex parte | | CC-1997-639 |
| Certiorari | | |

RESOLUCIÓN

San Juan, Puerto Rico, a 3 de noviembre de 2000

A la Primera Moción de Reconsideración presentada en este caso, no ha lugar por haberse dividido igualmente el Tribunal al inhibirse el Juez Asociado señor Rivera Pérez.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Andréu García y los Jueces Asociados señores Rebollo López y Corrada del Río, hubieran reconsiderado. El Juez Asociado señor Rivera Pérez emitió por escrito voto de inhibición.

Isabel Llompart Zeno

Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Alexandra M. Andino Torres

      Ex parte               CC-1997-639      Cer

Voto de inhibición del Juez Asociado señor Rivera Pérez.

San Juan, Puerto Rico, a 3 de noviembre de 2000.

En el caso de marras el Juez suscribiente participó como Juez Apelativo en el Tribunal de Circuito de Apelaciones. Dicho Tribunal emitió sentencia, por voto unánime de los tres (3) jueces del panel, confirmando la sentencia emitida por el Tribunal de Primera Instancia, a los efectos de denegar la solicitud de la parte aquí peticionaria de cambio de sexo en su certificado de nacimiento.

¿Debe inhibirse de participar el suscribiente en el caso de marras como Juez Asociado de este Tribunal?  Entendemos que así es.  Veamos.

Es un principio reconocido por la Constitución del Estado Libre Asociado de Puerto Rico que todo ciudadano tiene derecho a un debido

Es un principio reconocido por la Constitución del Estado Libre Asociado de Puerto Rico que todo ciudadano tiene derecho a un debido

proceso de ley.[1] Este precepto constitucional garantiza que las personas disfruten de un sistema de justicia objetivo, equitativo e imparcial cuando acuden ante los tribunales. En la medida en que los ciudadanos confíen en la integridad, honestidad e imparcialidad de quienes tienen la noble encomienda de impartir justicia, se mantiene la fe en este sistema, evitando el inmenso riesgo de que tomen la justicia en sus propias manos.[2] Así, la ley, los cánones de ética judicial y las mejores costumbres y tradiciones judiciales están dirigidos a mantener la confianza pública en nuestro sistema de justicia. Por consiguiente, es responsabilidad de los llamados a impartir justicia velar porque sus actuaciones respondan a normas de conducta que honren la integridad e independencia de su ministerio y estimulen la confianza en la Judicatura.[3]

La imparcialidad y objetividad con la cual deben proceder los jueces, es de tal importancia que la ley exige que cualquier causa que tienda a minar la confianza pública en el sistema de justicia, así como razonablemente arrojar dudas sobre la imparcialidad para adjudicar, el juez deberá inhibirse de actuar en un pleito o procedimiento. Regla 63 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III;[4] Cánones de Ética Judicial, Cánones XI y XII(g), 4 L.P.R.A. Ap. IV-A. Estas normas establecen que

---

[1] La Constitución del Estado Libre Asociado de Puerto Rico, Artículo II, sección 7, dispone que "ninguna persona puede ser privada de su libertad o propiedad sin el debido proceso de ley".

[2] _Pérez Reilly v. Club Deportivo Ponce, Inc._, 126 D.P.R. 837, 841-842 (1990).

[3] Cánones de Ética Judicial, Canon I, 4 L.P.R.A. Ap. IV-A.

[4] La Regla 63 de Procedimiento Civil, en lo pertinente, dispone:

> A iniciativa propia, o a recusación de parte, un juez deberá inhibirse de actuar en un pleito o
> procedimiento en cualquiera de los casos siguientes:

> [...]

> (e)    Por cualquier otra **causa que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar o que tienda a minar la confianza pública en el sistema de justicia.** (Énfasis nuestro.)

el juez no solamente ha de ser imparcial, sino que su conducta ha de excluir toda posible apariencia de parcialidad. Bajo la norma de "apariencia de parcialidad", para que proceda la inhibición "no es imprescindible probar la existencia de prejuicio o parcialidad de hecho; basta con la apariencia de parcialidad o prejuicio".[5] Los tribunales de justicia tienen el deber de velar que la balanza en la cual se pesan los derechos de todos nuestros conciudadanos esté libre de sospechas, **aun cuando las mismas sean infundadas**.[6] (Énfasis nuestro.) Los jueces no deben aceptar encomiendas o labores que pongan en riesgo la imagen de imparcialidad y sobriedad que enaltece a la judicatura ni que arrojen dudas acerca de su capacidad para actuar con ecuanimidad.[7]

El criterio establecido en la Regla 63.1 de Procedimiento Civil, supra, es similar al criterio establecido en el Canon 12 (g) de los Cánones de Ética Judicial, supra;[8] al Canon 3(c)(1) del Código de Conducta Judicial de la American Bar Association[9]; y a la disposición estatutaria federal referente a la inhibición de jueces.[10] 28 U.S.C.A. § 455(a). Este criterio ha sido definido

---

[5] Pueblo v. Martés Olán, 103 D.P.R. 351, 355 (1975); Santiago Mercado v. Desiderio Cartagena, 112 D.P.R. 205, 214 (1982).

[6] Sucn. Ortíz Ortíz v. Campoamor Redín, 125 D.P.R. 106 (1990).

[7] In re: Fernando Campoamor Redín, res. el 24 de enero de 2000, 2000 T.S.P.R. 13, 2000 J.T.S. 25.

[8] Véase nota 43, infra.

[9] Dispone, en lo pertinente, el Canon 3(c):

C. Disqualification

(1) A judge should disqualify himself in a proceeding in which **his impartiality might reasonably be questioned**, included but not limited to instance where: (Énfasis nuestro.)

a. he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding,

b. ...

c.

[10] En 1974 el Congreso de los Estados Unidos enmendó esta sección para que fuese análoga al Canon 3c del Código de Conducta Judicial de la A.B.A. H. Rep. No. 1453, 93d. Cong., 2d. Sess. 3, 1974 U.S.

como un criterio objetivo, diseñado con el propósito de promover la confianza pública en la imparcialidad del proceso judicial.[11] Un caso que no pueda ser juzgado con la imparcialidad a que los litigantes tienen derecho, el interés de la justicia requiere la inhibición del juzgador.[12]

Este criterio, que establece la inhibición por cualquier causa que razonablemente pueda arrojar dudas sobre la imparcialidad para adjudicar, exige que sea analizada desde el punto de vista de un observador razonable, bien informado, con el conocimiento de todos los datos y circunstancias relevantes al caso, incluyendo aquellas que son de conocimiento general, como las que no están a la luz pública.[13] Se recomienda examinar: (1) los hechos pertinentes; (2) el récord del caso; y (3) la ley aplicable.[14] La imputación de parcialidad debe ser basada en hechos que produzcan duda razonable sobre la imparcialidad del juez en la mente de una persona razonable, no desde el punto de vista del juez, los litigantes o sus abogados.[15]

La experiencia que un juez ha adquirido durante su carrera, ya sea en la práctica privada como abogado, en una posición previa en otras ramas del gobierno, no es base suficiente para que éste se inhiba en procedimientos relacionados con esa experiencia.[16]

---

Code Cong. Admin. News 6351, 6353. La sección 455 del Título 28 del U.S.C. dispone, en lo pertinente, lo siguiente:

> (a) Any **justice**, judge, or magistrate of the United States shall disqualify himself in any proceeding **in which his impartiality might reasonably be questioned.** (Énfasis nuestro.)

[11] H. Rep. No. 1453, 93d. Cong., 2d. Sess. 3, 1974 U.S. Code Cong. Admin. News 6351, 6353.

[12] 7A Federal Procedure, Lawyer's Ed., Courts and Judicial System, § 20:70 (Supp. 1999).

[13] Richard E. Flamm, Judicial Disqualification: Recusal and Disqualification of Judges, Little, Brown and Company, §5.6.4, §5.8, pág. 163 (1996).

[14] Íd.

[15] Íd.

Aun cuando el juez es influenciado, consciente o inconsciente, por sus experiencias, asociaciones o prejuicios desarrollados a través de su vida, nuestro sistema tiene una expectativa en que esas influencias y prejuicios sean echados a un lado, y adjudiquen con ecuanimidad ética e intelectual todos los pleitos ante su consideración.[17]

Existen situaciones en las cuales los jueces, al ser nombrados a un tribunal de superior jerarquía, han tenido que revisar sus propias decisiones que emitieron mientras eran juzgadores en tribunales inferiores. En varias situaciones han procedido a inhibirse.[18] Por ejemplo, el Juez Presidente Burger no participó en los procedimientos de certiorari[19] presentados en el Tribunal Supremo de los Estados Unidos, referentes a los casos del Circuito de D.C. en los que él participó, al igual que el Juez Steward[20] y el Juez Harlan.[21] De igual manera, el Juez Scalia ha indicado que no participaría en ningún caso en el cual participó como Juez de Circuito.[22] Por otro lado, el Juez Oliver Wendell Holmes participó en un gran número de recursos ante el Tribunal Supremo de Estados Unidos, por virtud de los cuales revisaron

---

[16] Véase Ramírez de Ferrer v. Mari Bras, 142 D.P.R. ___ (1997), 97 J.T.S. 48, res. el 10 de abril de 1997.

[17] Santiago Mercado v. Desiderio Cartagena, supra. Véase, Richard E. Flamm, supra, §10.11

[18] Obtener información precisa en esta área es difícil por la naturaleza privada e individual de esta decisión. Por tradición, la mayoría de los Jueces del Tribunal Supremo Federal, al igual que los Jueces del Tribunal Supremo de Puerto Rico, no explican sus razones para inhibirse, por lo que es casi imposible saber con alguna precisión la verdadera razón para tal inhibición. Cf. Steven Lubet, *Certiorari Conundrum*, 80 Minn. Law Rev. 657, 659(1996). (Énfasis nuestro.)

[19] Investment Co. Inst. v. Camp, 397 U.S. 986(1970); General Telephone Co. of California v. F.C.C., 396 U.S. 888 (1969).

[20] Torre v. Garland, 358 U.S. 910 (1958); Zoomar, Inc. v. Paillard Prods., Inc. 358 U.S. 908 (1958).

[21] Shaughnessy v. United States, 349 U.S. 280 (1955).

[22] Nomination of Judge Antonin Scalia: Hearing Before the Senate Comm. on the Judiciary, 99th cong., 2nd Sess. 71-73 (1986). Steven Lubet, *Certiorari Conundrum*, 80 Minn. Law Rev. 657, 659, n. 13 (1996). Stempel, *Rehnquist, Recusal and Reform*, 53 Brook L. Rev. 589,608 (1987).

decisiones emitidas por la Corte Suprema de Massachusetts, en las cuales él intervino.[23] Cabe destacar, que esta actuación del Juez Holmes ha sido muy criticada, inclusive se ha considerado como una circunstancia "claramente proscrita hoy en día".[24] (Traducción nuestra.) Estas decisiones del juez Holmes fueron emitidas a principios del siglo XX. No es hasta el año 1924 que la A.B.A. adopta unos estándares generales sobre la conducta judicial, los cuales no aplicaban para esa fecha a los jueces del Tribunal Supremo Federal.[25] Actualmente, la situación es diferente con relación a la inhibición de los jueces en el Tribunal Supremo Federal. Desde el año 1974, cuando el Congreso de los Estados Unidos enmendó el estatuto federal sobre inhibición para asemejarlo a los Cánones de Conducta Judicial de la A.B.A.,[26] cualquier juez debe inhibirse, sin importar su jerarquía, si su actuación razonablemente crea dudas sobre su imparcialidad.[27]

El fundamento principal para criticar la intervención de jueces en procedimientos apelativos, que revisan las decisiones que ellos mismos emitieron mientras eran jueces de primera instancia, es que razonablemente se puede dudar de su imparcialidad al emitir su decisión:

> "it would be unbecoming for a judge to participate in the determination of the correctness, propriety and appropriateness of what he did in the trial of the case." Richard E. Flamm, _supra_, § 12.5.

Aunque es probable que en la revisión de sus propias decisiones, un juez esté reacio a revocar su propia decisión, no

---

[23] Como por ejemplo: Worceter v. Street R. Co., 196 U.S. 539 (1905); Dumbra v. Dumbra, 190 U.S. 340 (1903).

[24] Véase Richard E. Flamm, _supra_, §28.3.2; Stempel, _Rehnquist, Recusal and Reform_, _supra_, a la pág. 609.

[25] Stempel, _Rehnquist, Recusal and Reform_, _supra_, a la pág. 608.

[26] Véase nota 10, _supra_.

es menos cierto que evitar que el juez revise a nivel apelativo su propia decisión sirve solamente para demorar el poder decidir sobre una controversia similar.[28] (Énfasis nuestro.)

El propósito principal de estas directrices, relacionadas con la inhibición judicial, es establecer unos estatutos más estrictos y comprensivos, que promuevan la confianza en el sistema judicial eliminando la apariencia de arbitrariedad.[29] Las normas de inhibición, tendentes a eliminar el potencial de prejuicio, arbitrariedad y a establecer las garantías de una decisión justa para las partes, imponen principios de conducta que van dirigidos a la conciencia judicial individual.[30] El mecanismo colegiado asegura una justicia imparcial, serena restricción y celosa fiscalización de criterios.[31] La propia naturaleza de un foro colegiado impone a los jueces, de ordinario, unas limitaciones para asegurar que las decisiones reflejen el criterio mayoritario y estén basadas en el derecho aplicable y no en sus opiniones personales sobre los méritos de la controversia ante su consideración.[32] Al cumplir con su función constitucional, los jueces del Tribunal Supremo tienen una misión fundamental de expresión sobre **los asuntos de honda repercusión pública** que se someten ante su consideración. [33] (Énfasis nuestro.) Las decisiones del Tribunal Supremo exigen quórum y una votación mayoritaria, por lo que hay que ponderar con particular cuidado cualquier asunto sobre inhibición para asegurar que el Tribunal pueda decidir la controversia ante su

---

[27] Id. Véase nota 4, supra. 28 U.S.C.A. § 455; Canon 3(c) de los Cánones de Conducta Judicial de la A.B.A.

[28] Comment, *Meeting the challenge: Rethinking Judicial Disqualification*, 69 Cal. L. Rev. 1445, 1446 (1981).

[29] Richard E. Flamm, supra, §12.4.1.

[30] Ramírez de Ferrer v. Mari Bras, supra; Noriega Rodríguez v. Gobernador, 120 D.P.R. 267 (1988).

[31] Noriega Rodríguez v. Gobernador, supra.

[32] In re Colton Fontán, 141 D.P.R. ___ (1996), 96 J.T.S. 119, opinión de 23 de septiembre de 1996.

[33] Noriega Rodríguez v. Gobernador, supra.

consideración, según los derechos constitucionales y las normas legales y jurídicas establecidas.[34] La inhibición de un juez del Tribunal Supremo reviste un interés excepcional,[35] la cual no conlleva su sustitución, y muy bien podría dar lugar a un empate en una votación que impida un pronunciamiento final del tribunal de última instancia en un asunto de importancia pública.[36]

En el Tribunal Supremo de Estados Unidos no se puede sustituir al juez inhibido. De haber un empate en una votación, o de no haber el quórum requerido, se ha invocado la regla de la necesidad. La regla de la necesidad es un principio en el cual la inhibición de un juez no es permitida en el Tribunal Supremo Federal, si tiene como consecuencia el evitar que se pueda tomar una decisión sobre una controversia. "Actual disqualification of a member of a court of last resort will not excuse such member from performing his official duty if failure to do so would result in a denial of a litigant's constitutional righ to have a question, properly presented to such court, adjudicated".[37]

Sin embargo, el Tribunal Supremo de Puerto Rico ha sido enfático al establecer como principio que contra los estados de inhibición moral no puede imperar la regla de la necesidad.[38] Por lo tanto, en Puerto Rico no es de aplicación la regla de la necesidad cuando un Juez del Tribunal Supremo decide inhibirse. Nada ni nadie puede obligarle a participar.

Cada juez integrante del Tribunal Supremo es la autoridad de última instancia sobre la determinación de su capacidad e

---

[34] In re Colton Fontán, supra.

[35] Sánchez v. López, 116 D.P.R. 172 (1985).

[36] In re Colton Fontán, supra.

[37] U.S. v. Will, 449 U.S. 200, 214 (1980).

[38] In re Colton Fontán, supra; Noriega Rodríguez v. Gobernador, supra; Santiago v. Superintendente, supra; Pizarro v. Tribunal, 100 D.P.R. 774 (1972); In re Andréu Ribas, 81 D.P.R. 90 (1959).

imparcialidad sobre una controversia.[39] La decisión sobre materia de inhibición de un Juez del Tribunal Supremo[40] es individual y no plenaria; incumbe exclusivamente a la esfera interna de la conciencia judicial individual la decisión en materia de inhibición.[41] La tradición entre los jueces del Tribunal Supremo de Puerto Rico ha sido inhibirse, en las siguientes situaciones: (1) por razón del objeto del litigio, cuando existe un vínculo de interés moral o material entre lo que se debate y la figura del magistrado; (2) por razón de las partes en conflicto, amistad o enemistad entre el juez y los litigantes; y (3) **por razón de los foros llamados a intervenir, como por ejemplo, haber intervenido previamente como** abogado, consejero o **juez en el pleito.**[42] (Énfasis nuestro.) Además, el Canon XII de los Cánones de Etica Judicial, 4 L.P.R.A. Ap. IV-A, establece claramente que el juez no debe entender en procedimiento judicial alguno en que tenga prejuicio o parcialidad **por haber prejuzgado el caso.**[43] (Énfasis nuestro.)

---

[39] Ramírez de Ferrer v. Mari Bras, supra; Noriega Rodríguez v. Gobernador, supra.

[40] El Reglamento del Tribunal Supremo de Puerto Rico en materia de inhibición dispone que:

> (1) Cualquier Juez de este Tribunal que fuese objeto de una comunicación oral o escrita hecha fuera de los canales judiciales ordinarios, mediante la cual se trate de transmitirle información o de influir en su ánimo respecto a cualquier asunto ante este Tribunal, lo informará al pleno del Tribunal y decidirá si se inhibe o no. **Lo anterior es sin perjuicio de las demás causales de inhibición que establecen la ley, los cánones de ética judicial y las mejores costumbres y tradiciones judiciales,** y sin perjuicio también de las sanciones que pueda imponer el Tribunal a cualquier abogado(a) que promueva o permita tales comunicaciones. (Énfasis nuestro.)

> (2) [...]

> Cualquier Juez podrá inhibirse motu proprio sin tener que expresar los motivos para tal inhibición. Reglamento del Tribunal Supremo de Puerto Rico de 1996, Regla 4(e), 4 L.P.R.A. Ap. XXI-A.

[41] Noriega Rodríguez v. Gobernador, supra.

[42] Santiago Mercado v. Desiderio Cartagena, 112 D.P.R. 205, 214 (1982); In re Colton Fontán, supra.

[43] Dispone, en lo pertinente, el Canon 12 de los Cánones de Ética Judicial:

> La Jueza o el Juez no debe entender en procedimiento judicial alguno en que la ley le

Luego de este análisis, es evidente que toda la normativa anteriormente discutida tiene como propósito salvaguardar la confianza de las personas en nuestro sistema de justicia. Cada persona que se acerque a los tribunales de Puerto Rico debe tener la confianza plena de que sus reclamaciones serán atendidas, sus derechos serán garantizados y la decisión que se tome será una objetiva, imparcial, y sobre todo justa, tal como lo exige el debido procedimiento de ley.

El debido proceso de ley requiere que los procedimientos sean justos con las partes a ser afectadas y que se adapten apropiadamente a los fines que se desea conseguir. Esta cláusula garantiza un tribunal justo e imparcial. La imparcialidad con la cual los casos deben ser juzgados es un requisito sine qua non de un sistema democrático. Por otro lado, los tribunales no pueden abdicar a su función constitucional de resolver controversias genuinas surgidas entre partes opuestas, que tienen interés real en obtener un remedio que ha de afectar sus relaciones jurídicas. Esta normativa es más importante en el caso del Tribunal Supremo de Puerto Rico, cuyas decisiones, como tribunal de última instancia, resultan en la expresión última, suprema y obligatoria de la interpretación de las leyes. La necesidad de que el derecho sea uniforme hace imprescindible que las decisiones del Tribunal Supremo sean obligatorias para el

---

prohiba actuar, incluyendo, pero sin limitarse a cualesquiera de los casos siguientes:

(a) Por tener prejuicio o parcialidad hacia cualesquiera de las personas, los abogados o las abogadas que intervengan en el pleito o por haber prejuzgado el caso.

…

(g) Por cualquier otra causa que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar o que tienda a minar la confianza pública en el sistema de justicia.

El Juez o la Jueza deberá inhibirse tan pronto conozca de la causa de inhibición mediante resolución escrita en la que hará constar dicha causa, con notificación de la misma a todas las partes.

Tribunal de Circuito de Apelaciones y el Tribunal de Primera Instancia. *Op. Sec. Just. Núm. 11 de 1983.* El Tribunal Supremo, mediante una opinión, establece las normas a seguir, así como la interpretación de cualquier disposición estatutaria o reglamentaria.[44] Ante la situación de que estas decisiones exigen quórum y votación mayoritaria, la inhibición de un Juez del Tribunal Supremo de Puerto Rico puede impedir el pronunciamiento final en un asunto de importancia pública, que podría producir, inclusive, el avalar acciones que infrinjan los derechos y libertades fundamentales de la ciudadanía, consagrados en nuestra Constitución. Tal inhibición podría lastimar la facultad constitucional del Tribunal Supremo de Puerto Rico, de ser la autoridad máxima que interpreta la Constitución de Puerto Rico, así como las leyes del país.[45] El juez, en su obligación de mantener la confianza en el sistema, está obligado a analizar de manera razonable, conociendo todas las circunstancias relevantes, los hechos particulares, el derecho constitucional a un debido procedimiento de ley de las partes, la ley, los cánones de ética judicial y las tradiciones judiciales, para poder tomar aquella decisión que mejor salvaguarde la confianza de las personas en el sistema de justicia.

Después de realizar un balance entre los factores antes enunciados, concluimos que debemos inhibirnos de participar en este asunto, por haber participado como Juez de Apelaciones en la decisión emitida por el Tribunal de Circuito de Apelaciones y revocada por este Tribunal. El haber pasado juicio sobre los hechos de este caso a nivel del Tribunal de Circuito de Apelaciones, entendemos nos inhibe de participar a nivel de este Tribunal para volver a evaluar los mismos hechos, al considerar la solicitud del Estado para que se reconsidere lo actuado por

---

[44] <u>Figueroa Méndez v. Tribunal</u>, 101 D.P.R. 859 (1974).

[45] Artículo V, sección 4, de la Constitución de Puerto Rico.

esta Curia.  No obstante, tal situación no nos inhibe de evaluar la cuestión de derecho envuelta en un caso futuro.


Efraín E. Rivera Pérez
Juez Asociado