ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| JAIME DE LEÓN HERNÁNDEZ<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN DE PUERTO RICO<br><br>Recurrido | KLRA202400233 | *Revisión Judicial* procedente del Departamento de Corrección y Rehabilitación de Puerto Rico<br><br>Querella Núm.: 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<br><br>Sobre: Querella Disciplinaria |

Panel integrado por su presidenta, la Juez Ortiz Flores, el Juez Rivera Torres, la Juez Rivera Pérez y el Juez Campos Pérez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de junio de 2024.

Comparece la parte recurrente, el Sr. Jaime De León Hernández (señor De León Hernández), quien es miembro de la población correccional. Impugna la *Resolución* emitida el 21 de febrero de 2024 y notificada el día 29 siguiente, por el Departamento de Corrección y Rehabilitación (DCR). En el aludido pronunciamiento, el DCR determinó incurso al recurrente por la violación a los Códigos 104, 107 y 111 del Reglamento Núm. 9221, *infra.* En consecuencia, lo sancionó a una segregación disciplinaria por un término de 125 días.

Anticipamos la confirmación de la determinación administrativa impugnada.

**I.**

Surge del expediente ante nos que, el 21 de diciembre de 2023, se efectuó un registro en la celda ocupada por el recurrente y el Sr. Alex Pérez Torres (señor Pérez Torres). En el proceso, se descubrió que el conducto del acondicionador de aire estaba obstruido, el receptáculo de enchufes había sido vandalizado y el

Número Identificador

SEN2024_____

interruptor de corriente eléctrica, así como la roseta, tenían los cables expuestos. Además, se encontró una fisga dentro del colchón inferior de la litera de la celda. Ello, en violación a los Códigos 104, 107 y 111 del *Reglamento para establecer el procedimiento disciplinario de la población correccional* de 8 de octubre de 2020, Reglamento Núm. 9221, los cuales establecen lo siguiente:

> REGLA 15 – ACTOS PROHIBIDOS DE NIVEL I
>
> Se considerarán como Actos Prohibidos Nivel I los siguientes Códigos:
>
> .  .  .  .  .  .  .  .
>
> (104) Prohíbe la posesión, fabricación, uso, distribución, introducción de herramientas, instrumentos, artículos, objetos o sustancias que afecten la seguridad institucional o que puedan utilizarse para obstruir, inutilizar, romper cerraduras, portones, cualquier artículo, mecanismo o procedimiento de seguridad.
>
> .  .  .  .  .  .  .  .
>
> (107) Posesión, Fabricación o Introducción de Armas de Fuego, Armas Blancas, Materiales Explosivos, Sustancias Químicas, y Municiones- Se prohíbe la posesión, fabricación, introducción de armas de fuego, armas blancas, materiales explosivos, sustancias químicas, municiones, sustancias de cualquier índole que puedan ser utilizadas para la confección de armas, materiales explosivos, sustancias químicas, o todo tipo de municiones. Se incluyen pistolas, revolver, navajas, fisgas, clavos, tornillos, cualquier otro que pueda causar algún tipo de daño corporal.
>
> .  .  .  .  .  .  .  .
>
> (111) Daños a la Propiedad Perteneciente al Gobierno de Puerto Rico o Daños a la Propiedad de una Persona con un Valor de Cincuenta ($50) Dólares o Más, o su Tentativa - Consiste en destruir, alterar, dañar, interferir, obstruir, inutilizar o hacer inservible para su uso propiedad mueble o inmueble perteneciente al Gobierno de Puerto Rico o daños a la propiedad de una persona con un valor de cincuenta ($50) dólares o más utilizando cualquier medio, artículo o sustancia. Incluye sin limitarse a afectar el funcionamiento de los servicios sanitarios, eléctricos, rotura de las paredes, portones, ventanas, "mattress", etc.

El 22 de diciembre de 2023 se le notificó la correspondiente querella al recurrente, en la que se le imputó incurrir en la conducta prohibida en los referidos Códigos.[1]

---

[1] *Informe Disciplinario (Querella),* Anejo (a) del apéndice del recurso.

La vista disciplinaria fue celebrada el 21 de febrero de 2024 ante la Oficial Examinadora Madeline Morales Santiago. En el procedimiento administrativo, el señor De León Hernández no admitió las violaciones imputadas. Luego de justipreciar la prueba, se consignaron las siguientes determinaciones de hechos:

> Que el querellante Félix M. Morales se encontraba en el M[ó]dulo 3 N de la institución Ponce Adultos 1000.
>
> Que el querellante se encontraba efectuando un registro en la celda 102, que pertenece al querellado.
>
> Que el querellado vive con el confinado Axel Pérez [Torres].
>
> Que el querellante le ocup[ó], en el interior de la celda el conducto del aire tapado, el *outlet* vandalizado el interruptor de la luz con cables expuestos y la roseta de la luz.
>
> Que en el expediente administrativo hay fotografía de lo ocupado.
>
> Que el día de la vista el querellado se declaró inocente.

Al tenor de los enunciados esbozados, el DCR declaró al señor De León Hernández incurso en la conducta imputada, mediante la *Resolución* aquí impugnada.[2] Como sanción disciplinaria, se le impuso una segregación de 125 días.

No conteste, el recurrente instó una oportuna *Solicitud de Reconsideración.*[3] En ésta, denunció la violación al debido proceso de ley. En particular, que no se contó con el testimonio del señor Pérez Torres ni del oficial Vázquez, quien presuntamente lo ubicó en la celda un mes antes del registro. Acotó que la celda presentaba problemas eléctricos. Alegó que en el procedimiento adjudicativo no se atendió adecuadamente su declaración respecto a las condiciones en las que estaba su celda antes de que fuera asignado a la misma. Aludió también a que la Oficial Examinadora debió inhibirse, toda vez que tenía conocimiento previo del incidente. Además, indicó que

---

[2] *Resolución*, Anejo (b) del apéndice del recurso.

[3] *Solicitud de Reconsideración de Decisión de Informe Disciplinario para Confinado* y *Moción [de] Reconsideración*, Anejos (c) y (d) del apéndice del recurso.

le expresó a la funcionaria que se encontraba "en una Regla #9" del Reglamento Núm. 9221, en alusión a una suspensión de privilegios como medida de seguridad el 28 de diciembre de 2023. Luego, al ser sancionado por 125 días, arguyó, entonces, que se le estaba disciplinando dos veces por los mismos hechos.

El 26 de marzo de 2024, el DCR declaró no ha lugar la petición del recurrente.[4] Basó su decisión en los siguientes enunciados fácticos:

• Que contra el confinado Jaime de León Hernandez se radicó un informe disciplinario donde se le imputaba la violación de los códigos 104, sobre prohíbe la posesión, fabricación, uso, distribución, introducción de herramientas, instrumentos, artículos, objetos o sustancias que afecten la seguridad institucional o que puedan utilizarse para obstruir, inutilizar, romper cerraduras, portones, cualquier artículo, mecanismo o procedimiento de seguridad, 107, sobre posesión, fabricación o introducción de armas de fuego, armas blancas, materiales explosivos, sustancias químicas y municiones y 111, sobre daños a la propiedad perteneciente al Gobierno de Puerto Rico o daños a la propiedad de una persona con un valor de $50.00 o más, o su tentativa del *Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional* aprobado el 8 de octubre de 2020.

• Que, radicado el informe disciplinario, se realizó la investigaci[ó]n reglamentaría.

• Que al confinado querellado le fue entregada copia del Informe disciplinario en la institución Ponce Adultos 1000, según se certifica con la firma del confinado.

• Que, celebrada la vista administrativa, la Oficial Examinadora, emitió la resolución de la cual surge que encontró Incurso al confinado por la violación a los códigos 104; 107 y 111 del Reglamento, *supra*, determinando como sanción disciplinaria: Segregación Disciplinaria por el término de 125 d[í]as, consecutiva con cualquier otra sanción impuesta.

• Que se alegó en el informe disciplinario, que el día 21 de diciembre de 2023, el oficial querellante se encontraba realizando un registro en la celda 102 del Módulo 3N, de la institución Ponce Adultos 1000. Que la celda le pertenece al querellado y al confinado Axel P[é]rez [Torres]. Que el oficial querellante encontró el

---

[4] *Determinación*, Anejo (e) del apéndice del recurso.

conducto del acondicionador de aire tapado, el receptáculo vandalizado, el interruptor de luz con los cables expuestos y la roseta de la luz también.

• Que el confinado present[ó] un recurso de reconsideración el día 26 de marzo de 2024.

Todavía insatisfecho, el recurrente incoó el presente recurso de revisión judicial. En esencia, reprodujo las alegaciones expuestas en su petición de reconsideración, pero adicionó ciertas alegadas declaraciones del confinado Pérez Torres. Planteó como errores las violaciones a sus derechos constitucionales, así como a las Reglas 6, 12, 25 y 38 del Reglamento Núm. 9291, *supra.*

En cumplimiento de nuestra *Resolución* de 22 de mayo de 2024, el DRC compareció por conducto de la Oficina del Procurador General. Con el beneficio de su comparecencia, resolvemos.

**II.**

**A.**

El Artículo 4.002 de la Ley Núm. 201 de 22 de agosto de 2003, *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003*, 4 LPRA sec. 24 *et seq.*, dispone sobre la jurisdicción y competencia de este tribunal intermedio para revisar, como cuestión de derecho, las decisiones finales de las agencias y los organismos administrativos. 4 LPRA sec. 24u. Por su parte, el Artículo 4.006 del estatuto establece la revisión de las resoluciones finales de los entes administrativos mediante el recurso de revisión judicial. 4 LPRA sec. 24y. Cónsono con ello, la Ley Núm. 38 de 30 de junio de 2017, *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, 3 LPRA sec. 9601 *et seq.*, en la Sección 4.5 establece el alcance de la revisión judicial. 3 LPRA sec. 9675. En particular, el estatuto dispone que este tribunal de segunda instancia sostendrá las determinaciones de hechos de las decisiones de las agencias, si se basan en evidencia sustancial que obra en el expediente administrativo; revisará en todos sus aspectos las conclusiones de

derecho; y podrá conceder al recurrente el remedio apropiado si determina que a éste le asiste el derecho. el Tribunal Supremo de Puerto Rico ha reiterado que las determinaciones de los organismos administrativos "poseen una presunción de legalidad y corrección que los tribunales debemos respetar mientras la parte que las impugna no presente la evidencia suficiente para derrotarlas". (Énfasis nuestro). *Rolón Martínez v. Supte. Policía, supra*; *Torres Rivera v. Policía de PR, supra*; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012); *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1002-1003 (2011). Por ende, nuestra intervención sólo se justifica cuando el ente administrativo haya obrado de forma arbitraria, ilegal o irrazonable.

**B.**

Como es sabido, el debido proceso de ley es un derecho fundamental que "encarna la esencia de nuestro sistema de justicia". *López y otros v. Asoc. de Taxis de Cayey*, 142 DPR 109, 113 (1996). "Su prédica comprend[e] los elevados principios y valores que reflejan nuestra vida en sociedad y el grado de civilización alcanzado". *Amy v. Adm. Deporte Hípico*, 116 DPR 414, 420 (1985). El debido proceso de ley se refiere al "derecho de toda persona a tener un proceso justo y con todas las debidas garantías que ofrece la ley, tanto en el ámbito judicial como en el administrativo". *Aut. Puertos v. HEO*, 186 DPR 417, 428 (2012), que cita con aprobación a *Marrero Caratini v. Rodríguez Rodríguez*, 138 DPR 215, 220 (1995). Es decir, "el concepto *debido proceso de ley* tiene dos vertientes: la sustantiva, que se refiere a la validez de las leyes que implementa el Estado en cuanto a su protección de los derechos de los ciudadanos, y la procesal, que se enfoca en garantizar un proceso justo y equitativo ante acciones estatales que interfieran con intereses privados". *Garriga Villanueva v. Mun. de San Juan*, 176 DPR 182, 196 (2009).

Para determinar si un procedimiento administrativo de tipo adjudicativo cumple con los requisitos constitucionales del debido proceso de ley, hay que analizar los factores siguientes: *el interés privado que puede resultar afectado por la actuación oficial; el riesgo de una determinación errónea debido al proceso utilizado y el valor probable de garantías adicionales o distintas, y el interés gubernamental protegido en la acción sumaria, incluso los cargos fiscales y administrativos que conllevaría imponer otras garantías procesales.* (Cursivas en el original). *Báez Díaz v. E.L.A.*, 179 DPR 605, 623 (2010), que cita a *Torres v. Junta*, 161 DPR 696 (2004) y a *Vélez Ramírez v. Romero Barceló*, 112 DPR 716 (1982).

En lo que atañe a este caso, el Tribunal Supremo federal ha dictaminado "que los procesos disciplinarios contra confinados no constituyen parte integral del procesamiento criminal, por ello *no aplican plenamente las garantías del debido proceso de ley*". *Ponte v. Real*, 471 US 491 (1985); *Wolff v. McDonnell*, 418 US 539, 556 (1974), citado en *Báez Díaz v. E.L.A., supra.* Así, pues, el debido proceso de ley requerido en los procedimientos disciplinarios institucionales tiene que ser flexible y dependerá de los intereses afectados por la acción gubernamental. *Báez Díaz v. E.L.A., supra*, que cita a *Superintendent v. Hill*, 472 US 445, 454 (1985).

**III.**

En la presente causa, el señor De León Hernández alega que se le privó de presentar prueba a su favor. Distinto a lo alegado en la petición de reconsideración, ahora indica en su escrito que el señor Pérez Torres presuntamente declaró "libre y voluntariamente" que la fisga le pertenecía y que fue él quien había tapado el conducto del acondicionador de aire. Aduce que el informe de investigación no reflejó esa información, por lo que la juzgadora de hechos no tuvo ante sí toda la evidencia que le favorecía. Plantea también que la Oficial Examinadora debió inhibirse y no intervenir en el

procedimiento disciplinario por el conocimiento que ésta tenía del incidente. Ello así, porque "tu[v]o la totalidad de toda [*sic*] la evidencia documental, los expedientes administrativos del caso de autos, m[á]s los informes de[l] incidente, entrevistas al personal del DCR como el oficial que redact[ó] la Querella #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 el oficial Félix Morales..."[5] de la Regla 9 del Reglamento Núm. 9221, *supra*, efectuada el 28 de diciembre de 2023, en relación a los hechos de 21 de diciembre de 2023. Por ello, entiende que el 21 de febrero de 2024 fue sancionado dos veces por los mismos hechos.

Como cuestión de umbral, este foro intermedio se encuentra impedido de revisar la decisión adoptada por el DCR y la segregación administrativa de 90 días, en ocasión de la Regla 9 del Reglamento Núm. 9221, *supra*, de 28 de diciembre de 2023. Nótese que esa determinación es distinta a la que nos ocupa y no consta que el señor De León Hernández haya solicitado su revisión.

En cuanto a los señalamientos de las violaciones a la Regla 6, *Querella Disciplinaria* y Regla 12, *Investigación*, de la reglamentación, somos del criterio que al recurrente se le salvaguardó su debido proceso de ley, en su vertiente procesal, en el contexto de una institución carcelaria. En este caso, luego de los hallazgos que el oficial correccional Morales encontró en la celda del señor De León Hernández y su compañero, el custodio suscribió una informe disciplinario o querella, documento que fue oportunamente notificado al recurrente. Posteriormente, se realizó la investigación de rigor. Asimismo, a la formulación de cargos siguió la celebración de una vista administrativa, en la que la funcionaria encontró probados los actos imputados. En consecuencia, se aplicó una segregación disciplinaria por un término de 125 días contra el señor De León Hernández, la cual habría de cumplirse de manera

---

[5] Véase, *Moción solicitando revisión administrativa*, pág. 6, acápite (f).

consecutiva con cualquier otra medida disciplinaria o segregación administrativa impuesta. Así, pues, salvo las propias alegaciones del recurrente, no consta evidencia sustancial en el expediente administrativo ante nos sobre las presuntas violaciones a la reglamentación. Recuérdese que, en armonía con el ordenamiento jurídico, este dictamen se presume correcto y conforme a Derecho.

De otro lado, por virtud de la Regla 10 (B) (3) del Reglamento Núm. 9221, *supra*, que versa sobre el emplazamiento, al querellado se le advierte, entre otros derechos, el de "solicitar al Oficial de Querellas que entreviste testigos específicos y los interrogue con preguntas específicas previamente sometidas por el miembro de la población penal". En la causa de autos, no se desprende del expediente que se haya realizado ese proceso. A su vez, el inciso (6) de la Regla 25 del Reglamento Núm. 9221, *supra*, establece que "[c]ualquier declaración de testigos solicitada por el querellado será presentada al Oficial Examinador. S[ó]lo el Oficial Examinador puede determinar si un testigo debe comparecer a la vista administrativa". En la causa que nos ocupa, conforme con la evidencia testifical, documental y fotográfica que ponderó la Oficial Examinadora, ésta halló incurso al recurrente por la comisión de los actos imputados. Ciertamente, en consonancia con la Regla 31 del Reglamento Núm. 9221, *supra*, la Oficial Examinadora ostentaba discreción para determinar cuáles testimonios serían necesarios y pertinentes a las cuestiones a dirimir, incluyendo el presunto testimonio exculpatorio del confinado Pérez Torres. A nuestro juicio, el señor De León Hernández no logró rebatir la presunción de corrección ni derrotar la deferencia de la parte recurrida con meras alegaciones que no encuentran sostén en el expediente administrativo.

Finalmente, con relación a la supuesta intervención de la Oficial Examinadora en dos procesos disciplinarios contra el

recurrente, el inciso (9) de la Regla 25 del Reglamento Núm. 9221, *supra*, establece que un Oficinal Examinador debe inhibirse de presidir determinada vista disciplinaria únicamente en dos instancias: (1) si presenció o tiene conocimiento del incidente por el cual se activó el respectivo procedimiento disciplinario, es decir, si pudiera ser testigo; o (2) si redactó la correspondiente querella. Ninguna de las aludidas instancias están presentes en la causa del epígrafe, por lo que es inmeritoria la contención del recurrente. Incluso, es sabido que la regla de la necesidad permite, como excepción a las normas sobre inhibición, que el juzgador de hechos participe en un proceso administrativo de la agencia, cuando no sea posible sustituirlo o su participación sea necesaria.[6]

Acerca de la imputada violación a la Regla 38 del Reglamento Núm. 9221, *supra*, advertimos que la segregación administrativa de 90 días, adoptada por el DCR al palio de la Regla 9, procura el restablecimiento del orden institucional y salvaguardar la vida y la propiedad. Este tipo de medida cautelar es distinta a las segregaciones disciplinarias que aparejan la violación de una conducta proscrita en la reglamentación.[7] Por lo tanto, en cuanto a

---

[6] Refiérase a *Brau, Linares v. ELA et als.*, 189 DPR 1068, 1071 (2013) (Resolución), que cita a *Ramírez de Ferrer v. Mari Brás*, 142 DPR 941 (1997); *Noriega Rodríguez v. Gobernador*, 120 DPR 267 (1988); y a J.J. Álvarez González, *La Asamblea Legislativa de Puerto Rico y las pensiones de los Jueces del Tribunal Supremo: Reseña de un conflicto con la independencia judicial*, 56 (Núms. 2-3) Rev. Jur. UPR 265, 273 (1987).

[7] La Regla 4 del Reglamento Núm. 9221, *supra*, consigna las siguientes definiciones:

. . . . . . . .

15. Medida Disciplinaria – determinación del Oficial Examinador impuesta al miembro de la población correccional con posterioridad a la celebración de la vista disciplinaria administrativa como resultado de encontrarse incurso en la comisión de uno o más actos prohibidos, según tipificados en este Reglamento.

. . . . . . . .

27. Segregación Administrativa – separación de un miembro de la población correccional del resto de la población correccional, como medida de seguridad, cuando la presencia de éste represente un grave riesgo a la vida, la seguridad o la propiedad de otros miembros de la población correccional o de sí mismo, empleados, o a la seguridad y al orden institucional.

28. Segregación Disciplinaria – medida disciplinaria que conlleva el aislamiento del miembro de la población correccional y su separación del

la supuesta violación a la Regla 38 (3), *Disposiciones Generales*, es forzoso concluir que el recurrente no logró demostrar la transgresión a la prohibición de "más de una querella disciplinaria contra un miembro de la población correccional por los mismos hechos o eventos que constituyan un curso de conducta indivisible para realizar un acto prohibido". Por ende, el señor De León Hernández se equivoca al alegar que la segregación disciplinaria de 125 días por la comisión de los actos aquí imputados constituye una segunda sanción por la misma conducta. Coincidimos con la parte recurrida al afirmar que "[l]os privilegios que haya perdido por la imposición de medidas de seguridad en su área de vivienda, en igualdad de condiciones con sus cohabitantes, obedece a unas razones y persigue un fin distinto al de la sanción disciplinaria que le fuera impuesta en el procedimiento del cual recurre".[8]

En suma, en la causa del título, no albergamos duda de que el recurrente no logró demostrar con evidencia suficiente que el DCR erró en su interpretación del Derecho, ni nos colocó en posición de concluir que las determinaciones de hecho reproducidas no estuviesen apoyadas por el expediente y la evidencia evaluada. Es sabido que, conforme con el criterio de razonabilidad y deferencia, no debemos intervenir con los enunciados fácticos de un organismo administrativo, siempre que éstos estén apoyados por evidencia sustancial que surja del expediente administrativo considerado en su totalidad. En el caso presente, tampoco podemos concluir, ni el señor De León Hernández nos ha persuadido, que el DCR haya actuado de forma irrazonable al imponerle una sanción de

---

resto de la población correccional por un espacio de tiempo determinado, según lo ordene el Oficial Examinador de Vistas Disciplinarias, con posterioridad a la celebración de la vista correspondiente, y de haber sido encontrado incurso por la falta imputada.

[8] Véase, *Alegato en oposición*, pág. 11.

segregación disciplinaria por el término de 125 días por encontrarlo incurso en los Códigos 104, 107 y 111.

**IV.**

Por los fundamentos expuestos, confirmamos la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones