RICHARD B. STERZINGER, demandante y recurrido, *v.* MADELINE V. CANDELARIO de EFRÓN, demandada y peticionaria.

*Números:* CE-93-543          *Resueltos:* 17 de diciembre de 1993
CE-93-573

*Graciany Miranda Marchand,* abogado de la peticionaria; *Maritza González Ortiz,* abogada del recurrido.

## SENTENCIA

## I

El Tribunal ha evaluado los señalamientos de la peticionaria Madeline V. Candelario de Efrón en la Moción de reconsideración presentada contra la Sentencia de 30 de agosto de 1993 del Tribunal de Apelaciones, Sección Norte. La acoge como un *certiorari.* Por versar sobre las mismas controversias, lo consolida con el CE-93-573 y expide ambos recursos.

## II

En las circunstancias particulares del presente caso, concluimos que el Juez del Tribunal de Apelaciones, Hon. Rafael Ortiz Carrión, no debió intervenir en su decisión.

Aclarado este extremo y evaluados los otros planteamientos de la peticionaria Candelario de Efrón, y vistos los fundamentos de la Resolución del Tribunal Superior, Sala de San Juan (Hon. José E. Broco Oliveras, Juez), de 30 de abril de 1990, *se revoca la Sentencia del Tribunal de Apelaciones de 30 de agosto de 1993.*

*Se devolverán a instancia los autos originales para la continuación de los procedimientos.*

Lo pronunció, manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Rebollo López concurrió con el resultado mediante opinión escrita. El Juez Asociado Señor Hernández Denton no intervino.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

### – O –

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López.

Como surge de la Sentencia que, al amparo de la Regla 50 de nuestro Reglamento (4 L.P.R.A. Ap. I-A), emite el Tribunal en el presente recurso, este Foro concluye que "el Juez del Tribunal de Apelaciones, Hon. Rafael Ortiz Carrión, no debió [de] intervenir" en el Panel del extinto Tribunal de Apelaciones que consideró y resolvió, a dicho nivel, el caso de autos; situación que, unida a "los otros planteamientos de la peticionaria Candelaria de Efrón", hace mandatoria —conforme el Tribunal— la revocación de la sentencia emitida en el caso por el referido Tribunal de Apelaciones. Sentencia, págs. 1 y 2.

No tenemos duda alguna de que dicho conciso decreto implica, o parte de la premisa de, *que la actuación del referido magistrado fue una imprudente e impropia o, cuando menos, totalmente improcedente a la luz de las disposiciones de los Cánones del Código de Ética Judicial*; ello así ya que, en opinión del Tribunal, dicha intervención, *prácticamente por sí sola*, constituye *suficiente fundamento* para revocar la sentencia que emitiera el referido Tribunal de Apelaciones.

Somos del criterio, sin embargo, que la determinación que hoy toma el Tribunal es una que no debe pasar desapercibida para la profesión por cuanto la misma *es una que establece un claro precedente sobre conducta judicial en nuestra jurisdicción* o, cuando menos, aclara el alcance de las disposiciones de varios Cánones de Ética Judicial.

I

La cabal comprensión de lo resuelto por el Tribunal, mediante la Sentencia que emite, hace necesario que hagamos un *breve* resumen de los hechos originales que dan lugar al recurso que hoy resolvemos. Estando ventilándose el Caso Civil Núm. RF-84-4810, *Sterzinger v. Candelario de Efrón*, ante el Tribunal Superior, Sala de San Juan,([1]) surgió un incidente —de inhibición— entre uno (1) de los abogados del demandante Sterzinger y el magistrado que presidía el mismo.([2]) Ello desembocó en la radicación ante este Tribunal de una querella, o querellas, que por orden de este Foro tuvo que investigar en el año de 1987 el *entonces* Procurador General de Puerto Rico, Lcdo. Rafael Ortiz Carrión.

El mencionado funcionario, luego de realizar la investigación que le hubiéramos encomendado, rindió el corres-

---

([1]) En dicho caso, el demandante Sterzinger reclamaba el establecimiento, por el foro judicial de Puerto Rico, de relaciones paterno-filiales en relación con una hija procreada durante su matrimonio con la demandada, Candelario de Efrón.

([2]) Esto es, entre el Juez Ángel D. Ramírez y la Lcda. Sarah Torres Peralta.

pondiente Informe ante este Tribunal; lo cual, por necesidad, requirió que Éste se compenetrara con todo lo que, hasta esa fecha, había ocurrido a nivel de instancia en dicho proceso judicial.([3]) En lo pertinente, y en relación con unas imputaciones que la demandada Candelario de Efrón alegadamente le había hecho a la abogada de Sterzinger y a uno (1) de los miembros de este Tribunal,([4]) el licenciado Ortiz Carrión concluyó que la referida demandada, quien es abogada de profesión, efectivamente había utilizado "argumentos personalistas para fundamentar sus escritos, *y hace ataques contra la dignidad personal y profesional de ambas personas mencionadas*", conducta que, en opinión del licenciado Ortiz Carrión, era "contrari[a] a las guías de conducta profesional establecidas en los Cánones 9, 29, 30 y 35". (Énfasis en el original suprimido y énfasis suplido.) Informe, pág. 6.

Aún más *significativo y pertinente*, al asunto hoy ante nuestra consideración, el licenciado Ortiz Carrión —al contestar señalamientos de la demandada Candelario de Efrón, sobre posible prejuicio en su contra de parte de la Oficina del Procurador General, por razón de que dos (2) abogados de dicha Oficina eran clientes, en dos (2) casos de divorcio, de la abogada del demandante Sterzinger— *le imputó a la demandada Candelario de Efrón, en el mencionado Informe, que ésta hacía* "imputaciones falsas que pretendían menoscabar la imagen de respeto que se merece y se ha ganado la Oficina del Procurador General". Moción de 2 de mayo de 1989, pág. 1.

Finalmente, y en lo pertinente, el licenciado Ortiz Carrión concluyó, en el Informe que rindiera, que este Tribunal podía exigirle responsabilidad profesional a la deman-

---

([3]) Así se desprende del Informe que el entonces Procurador General Ortiz Carrión le rindiera a este Tribunal.

([4]) Hon. Federico Hernández Denton, Juez Asociado del Tribunal Supremo de Puerto Rico, y la Lcda. Sarah Torres Peralta.

dada Candelario de Efrón a base del hecho que ella había participado en el caso como parte y como abogada.

Devuelto el caso al tribunal de instancia, y habiéndose inhibido el magistrado que había hasta entonces presidido los procedimientos, el caso le fue referido a otro magistrado. Como consecuencia de una llamada telefónica que este magistrado le hiciera a un juez de la Corte de Distrito para el Condado de Dade, Estado de Florida,(⁵) la demandada Candelario de Efrón solicitó la inhibición de este segundo magistrado. Asignada la dilucidación de la moción de inhibición ante otro magistrado (Hon. José Broco Oliveras, Juez) en cumplimiento de las disposiciones de la Regla 63.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, éste determinó —*sin poner en duda la imparcialidad del juez cuya recusación se solicitaba* y "a los fines de una pronta solución del caso y para eliminar el mecanismo de falta de confianza en el sistema"— *que el caso debía ser "reasignado a otro juez"*. Apéndice, Anejo 1, pág. 1.

No estando de acuerdo el demandante Sterzinger, éste radicó recurso de *certiorari* ante este Tribunal imputándole, *como único error*, al Juez Broco Oliveras haber errado al "recusar" al magistrado que tenía el caso asignado. Referimos el recurso a la Sección Norte del extinto Tribunal de Apelaciones. Un panel de tres (3) jueces de dicho foro judicial,(⁶) dictó sentencia *revocatoria* de la resolución emitida por el Juez Broco Oliveras; *siendo el "juez ponente" de dicha sentencia el Juez Rafael Ortiz Carrión.*

Inconforme, *naturalmente*, la demandada Candelario de Efrón acudió en revisión de dicha Sentencia ante este Tribunal *cuestionando no sólo la corrección de la misma sino la intervención en el caso del Juez Ortiz Carrión.*

---

(⁵) La licenciada Candelario de Efrón, quien se había mudado al Estado de la Florida, había acudido a dicho tribunal con el propósito, entre otros, de que se reconociera la validez del divorcio, entre ella y Sterzinger, decretado en Alemania y las relaciones paterno-filiales originalmente impuestas.

(⁶) Panel integrado por los Jueces Rossy García, Rodríguez de Oronoz y Ortiz Carrión.

## II

*El norte, u objetivo, que persiguen los Cánones de Ética Judicial lo es, ciertamente, la fe de la ciudadanía puertorriqueña en el sistema judicial de Puerto Rico y, por ende, en la justicia que se dispensa en nuestra tierra.* Dicho en otra forma, mediante la observancia de los Cánones de Ética Judicial, por parte de los miembros de la judicatura, se pretende fomentar —y preservar— el respeto y la confianza de los ciudadanos en los integrantes de la Rama Judicial; institución fundamental para todo pueblo democrático. A esos efectos, las disposiciones del Canon I del Código de Ética Judicial establecen "la norma" de conducta judicial a seguir, al disponer que:

> La fe de un pueblo en la justicia, como valor esencial de la democracia, *debe ser mantenida por los tribunales a los más altos niveles de la responsabilidad pública.*
> En el ejercicio de su delicada función, aquellos llamados a impartir justicia, conscientes de la posición que ocupan en la sociedad y de la trascendencia de su misión, *deben velar porque sus actuaciones respondan a normas de conducta que honren la integridad e independencia de su ministerio y estimule el respeto y la confianza en la judicatura.* (Énfasis suplido.) 4 L.P.R.A. Ap. IV-A.

El respeto y confianza en la judicatura que tenga la ciudadanía depende, *de manera principalísima*, de la conducta que observen los jueces; los cuales en el desempeño de sus funciones *deben ser laboriosos, prudentes, y, sobre todo, imparciales.*

En cuanto a este último requisito, no puede enfatizarse lo suficiente el hecho *de que el juez no sólo tiene que ser imparcial sino que debe evitar hasta la apariencia de parcialidad.*

Esa exigencia —*de evitar toda apariencia de parcialidad*— la encontramos en varios de los Cánones de Ética Judicial. A manera de ejemplo, podemos señalar que el Canon XI de Ética Judicial establece, en lo pertinente, que:

> El Juez no solamente ha de ser imparcial, *sino que su con-*
> *ducta ha de excluir toda posible apariencia de que es susceptible*
> *de actuar* a base de influencias de personas, grupos o partidos,
> o de ser influido por el clamor público, por consideraciones de
> popularidad o notoriedad, o por motivaciones impropias. Ha de
> tener siempre presente que su único empeño debe ser el de
> impartir justicia de conformidad con el derecho aplicable, con
> absoluta ecuanimidad, y sin preocuparle el reconocimiento que
> pueda darse a su labor, ni la crítica injusta. (Énfasis suplido.) 4
> L.P.R.A. Ap. IV-A.

Debido, precisamente, a esa exigencia es que el juez no debe celebrar entrevistas privadas con algunas de las partes, o sus abogados, ni permitir comunicaciones de éstos en ausencia de representación de los otros intereses que puedan ser afectados, excepto en casos no contenciosos en los que deberá ser muy cauteloso. Véase Canon XV de Ética Judicial, 4 L.P.R.A. Ap. IV-A.

Por otro lado, el juez debe evitar toda actuación o conducta *que pueda dar base* a la creencia de que ejerce, o pretende ejercer, influencia en el ánimo de un compañero de labores que tiene asignado un caso, como tampoco el juez *debe dar la impresión* de que otros puedan tener alguna influencia sobre él. Véase Canon XXIII de Ética Judicial, 4 L.P.R.A. Ap. IV-A.

Finalmente, en cuanto a este aspecto, debe mantenerse presente que la Regla 63.1 de las Reglas de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III) establece, en lo pertinente, que:

> A iniciativa propia, o a recusación de parte, un juez deberá
> inhibirse de actuar en un pleito o procedimiento en cualquiera
> de los casos siguientes:
> a)Por estar interesado en su resultado *o tener prejuicio o par-*
> *cialidad personal hacia cualquiera de las partes o sus abogados.*
>
> .      .      .      .      .      .      .      .
>
> e)Por cualquier otra causa *que pueda razonablemente arrojar*
> *dudas* sobre su parcialidad para adjudicar *o que tienda a minar*
> *la confianza pública* en el sistema de justicia. (Énfasis suplido.)

## III

A la luz de todo lo anteriormente expuesto, no tenemos duda alguna sobre el hecho de que la decisión del Juez Ortiz Carrión de intervenir, *y participar como juez ponente*, en el recurso de *certiorari* que se ventilara ante el extinto Tribunal de Apelaciones *fue innecesaria, y sorprendentemente imprudente, que demuestra una notable ausencia de buen juicio de parte de este magistrado.*([7])

Si bien es correcto que no podemos concluir que su actuación es demostrativa del "prejuicio personal" que requiere la citada Regla 63.1 de Procedimiento Civil,([8]) no es menos cierto que el contacto y participación anterior que él

---

([7]) Resulta procedente señalar que, mediante escrito de fecha 16 de noviembre de 1993, el Juez Rafael Ortiz Carrión compareció ante este Tribunal; "comparecencia especial" en la cual expresó, en síntesis y en lo pertinente, que:

"8)Cuando examiné dicho caso [como miembro del Tribunal de Apelaciones] *recordaba que* había intervenido en el Informe sobre una queja presentada por el Juez Angel Ramírez contra la Lcda. Sarah Torres Peralta, en el cual se planteaba la incompatibilidad entre su comparecencia como abogada en una serie de casos en los cuales el Hon. Angel Ramírez se desempeñaba como juez y su comparecencia como abogada en un caso contra el Hon. Angel Ramírez en su carácter personal. *También recordaba que* la queja fue presentada ante el Tribunal Supremo de Puerto Rico en el caso de custodia entre la Sra. Candelario de Efrón y el Sr. Sterzinger, y que el Tribunal Supremo la había referido a la Oficina del Procurador General para su investigación e informe correspondiente. *Sin embargo, consideré que tal Informe sobre la conducta profesional de una abogada y un juez no me impedía intervenir judicialmente en los méritos de una controversia en el caso del título.*

"9)En ese momento, y en ningún otro momento durante el trámite y decisión del caso del título, *tuve memoria sobre los detalles que hoy se traen a la consideración de este Honorable Tribunal, entre otros,* que la Oficina del Procurador General consolidó la queja del Hon. Angel Ramírez con otra que presentó la Sra. Efrón contra la Lcda. Torres Peralta por su conducta en el trámite del caso entre la Sra. Efrón y el Sr. Sterzinger. *Tampoco recordaba que* después que el Procurador General le sometió al Tribunal Supremo un informe sobre esas quejas y otros asuntos relacionados, la Sra. Efrón cuestionó la imparcialidad de su Oficina en la conducción de esa investigación y que el Procurador General le había planteado al Tribunal Supremo que la Sra. Efrón había utilizado lenguaje impropio en la exposición de sus alegaciones." (Énfasis suplido.) Comparecencia especial, págs. 3–4.

([8]) Hemos resuelto —en *Pueblo v. Maldonado Dipiní*, 96 D.P.R. 897 (1969)— que ... tal prejuicio o parcialidad debe ser personal y no judicial. Prejuicio personal debe ser una actitud extra-judicial en su origen y el hecho de que el juez ha intervenido en casos anteriores distintos, en contra de los mismos acusados o en contra de uno de ellos, no es suficiente para demostrar ese prejuicio personal. (Énfasis suprimido.)

tuvo con el caso en su carácter de Procurador General —*participación que ciertamente no puede ser caracterizada como de naturaleza "judicial o adjudicativa" y sí de carácter "investigativo y acusatorio"*— y las expresiones y conclusiones que entonces hizo sobre la demandada Candelario de Efrón *razonablemente arrojan duda sobre su imparcialidad en este asunto y, ciertamente, tienden a minar la confianza pública en el sistema de justicia.*

En fin, su actuación infringe el *mandato ético* a los efectos *de que los jueces deben evitar hasta la apariencia de parcialidad.* Dicho en forma más sencilla, *la actuación del Juez Ortiz Carrión en nada contribuye al fortalecimiento de la confianza y respeto de nuestra ciudadanía en la judicatura puertorriqueña.*

Por los fundamentos antes expuestos, *concurrimos* con la Sentencia que, al amparo de la Regla 50 de nuestro Reglamento, ante, emite una mayoría de los integrantes de este Tribunal en el recurso de epígrafe.