Colón Birriel, Juez Ponente
*1071 TEXTO COMPLETO DE LA RESOLUCIÓN
I
Carlos J. Pérez Morales (el “señor Pérez Morales”) nos solicita expidamos auto de certiorari y revoquemos una Resolución emitida por el Tribunal de Primera Instancia, Sala de Ponce, Hón. Carmen L. Otero Ferreiras, Juez, el 30 de noviembre de 2007, en el caso Pueblo de Puerto Rico v. Carlos J. Pérez Morales, Crim. Núm. JSC2005G0300, por infracción al Artículo 401 de la Ley de Sustancias Controladas. Mediante el dictamen, notificado por correo el 3 de diciembre de 2007, se declaró No Ha Lugar su solicitud para desestimar la acusación en su contra, fundamentada en haber estado expuesto a ser castigado dos veces por el mismo delito. Regla 64(e) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 64(e).
Resolvemos con el beneficio de los escritos, el derecho y la jurisprudencia aplicable.
II
Luego de los procedimientos de rigor, el 21 de abril de 2005, el Ministerio Público presentó contra el señor Pérez Morales una acusación por infracción al Artículo 401 de la Ley de Sustancias Controladas. El juicio fue pautado para el 24 de octubre de 2005, ocasión en que el señor Pérez Morales compareció, representado por el licenciado, Aníbal Lugo Irizarry, y el Ministerio Público, por el Fiscal Alberto Flores Bermúdez. En esa ocasión, el señor Pérez Morales renunció a su derecho a juicio por jurado, renuncia que fue aceptada por la Hon. Juez María del Carmen Berrios Flores, quien presidía el proceso, continuando los procedimientos por Tribunal de Derecho.
El 25 de octubre de 2005, continuó el proceso en horas de la tarde, finalizando en esa ocasión el contrainterrogatorio del licenciado Lugo Irizarry a un agente participante de los hechos imputados al señor Pérez Morales. El Fiscal Flores Bermúdez solicitó hacer uso de su turno de redirecto el próximo día hábil, concluyendo así, los trabajos del día. El 26 de octubre, la Juez Berrios Flores transfirió la continuación de la vista para el 27 de octubre de 2005, luego de lo cual, la trasladó para el lunes 7 de noviembre de 2005, sin las partes saber la razón para ello.
El próximo señalamiento tuvo lugar el 8 de noviembre de 2007. En esa ocasión, la Juez Berrios Flores *1072 manifestó que el juicio dio comienzo el 24 de octubre; no obstante, por un incidente ocurrido el segundo día del juicio, 25 de octubre, al finalizar las labores, analizó con detenimiento lo acontecido, determinando inhibirse motu proprio de continuar con el proceso. Expresó haber emitido una Resolución, que sería notificada, quedando el caso señalado para el 30 de enero de 2006, en la Sala 505.
En la vista del 30 de enero de 2006, ante la Juez Otero Ferreiras, el licenciado Lugo irizarry señaló que desconocía la razón por la cual el caso fue transferido a la Sala 505, toda vez que no constaba determinación alguna de la Juez Berrios Flores para inhibirse de continuar en el caso; alegó que de comenzarse el caso nuevamente, constituiría doble exposición, afectándose el derecho de su cliente a juicio rápido. El Ministerio Público argumentó que para prosperar la doble exposición tenían que configurarse sus elementos, los que no se encontraban presentes; que la Juez Berrios Flores, por circunstancias atribuibles a la representación legal del señor Pérez Morales, entendió prudente no continuar participando en el proceso. Puntualizó que su inhibición fue ajena al procedimiento, por lo cual, el planteamiento de doble exposición no debía prosperar, aun de comenzar el juicio por segunda ocasión.
A continuación, transcribimos la relación de hechos vertida en la Resolución del 30 de diciembre de 2005, notificada el 31 de enero 2006, emitida por la Juez Berrios Flores:

“En el caso que nos ocupa, al finalizar el segundo día del juicio por tribunal de derecho, luego de haberse finalizado las labores del día, mientras esta juez se disponía a salir del estrado, el abogado que representa al señor acusado, el Ledo. Aníbal Lugo Irizarry, realizó los actos que reseñamos a continuación, que nos fuerza a inhibirnos motu proprio de continuar presidiendo el mismo. ”

El Ledo. Aníbal Lugo Irizarry se acercó al podio en dirección a la Juez y el personal de sala y en presencia de los testigos de cargo, quienes se aprestaban a salir, sacó del bolsillo izquierdo de su chaqueta, un billete de la lotería y manifestó que el mismo lo estaba persiguiendo y que tenía que compartirlo, con gesto aparente de “partirlo en pedazos" para repartirlo. En ese momento, el fiscal asignado a la sala entraba nuevamente y presenció parte del incidente.
Ante lo ocurrido, esta Juez reclamó al Ledo. Lugo Irizarry sobre lo ocurrido y le ordenó que guardara el billete, reafirmándose que él sabía que ni los jueces ni el personal del tribunal aceptaban regalos y que esa acción era una falta de respeto al Tribunal. Le recalcó que su acción había sido inapropiada y que ese tipo de conducta estaba prohibida. En ese momento, el Ledo. Miguel A. Pacheco Cintrón, quien se había unido a la representación legal del acusado entró a la sala y al percatarse de la situación se llevó al Ledo. Lugo Irizarry fuera del salón de sesión.
Como hemos expresado, lo acontecido motivó que la Juez Berrios Flores se inhibiera motu proprio, de seguir atendiendo y adjudicar el oaso ante su consideración. La Juez analizó, en primer lugar, las razones por las cuales un juez debe de inhibirse en un asunto ante su consideración, y en segundo lugar, las posibles consecuencias que pudiera tener para el acusado las actuaciones de su representante legal. Expresó que éste no podía quejarse de una situación por él provocada; y en el presente caso no sería de aplicación la protección contra la doble exposición. Señaló que no podía haber la más mínima duda, que actos de un representante legal que pudieran lucir inapropiados y como funcionario judicial conoce le están prohibidos, y los que estaban reñidos con los Cánones de Ética Profesional, no podían dar lugar a que su cliente saliera absuelto.
Finalmente, la Juez Berrios Flores expresó: a) que aunque entendía que los actos del licenciado Lugo Irizarry en presencia de los testigos de cargo, terminados los trabajos del día, mientras aún estaba en el estrado, no eran ilegales, per se, podían constituir conducta impropia, toda vez que su marcada atención al tribunal podía interpretarse por una persona razonable como conducta impropia, pudiendo dar lugar a minar la confianza del público en cuanto a la imparcialidad del sistema judicial y de su persona; y b) ante esos hechos, se vio en la *1073 obligación de elevar el asunto a la consideración del Tribunal Supremo para su evaluación ética. Copia de la Resolución fue notificada a las partes y al Tribunal Supremo; por último, remitió el expediente del caso criminal a la atención de la Juez Administradora Regional, Hon. Nereida Cortés González, para los procesos posteriores de rigor.
Mediante escrito titulado Moción Solicitando Reconsideración, presentado el 14 de febrero de 2006, el licenciado Lugo Irizarry acusó recibo de la Resolución de inhibición de la Juez Berrios Flores, recibida en sus oficinas, según expresó, el 3 de febrero de 2006. Solicitó la regrabación de los procedimientos para poder confeccionar un escrito de reconsideración.
Posteriormente, el 8 de mayo de 2006, luego de examinada la transcripción de la vista, el licenciado Miguel A. Pacheco Cintrón, uno de los representantes del señor Pérez Morales, presentó escrito titulado Moción de Reconsideración. Expresó, en lo pertinente, que era el consenso de todos los abogados del caso, que la Juez Berrios Flores debía de continuarlo y así lo solicitaban, en consideración al respeto y estima profesional que le dispensaban, así como la admiración que sentían por su absoluta integridad, tanto dentro y fuera del estrado. Siguió expresando que luego de discutir el caso, el licenciado Lugo Irizarry admitió lo impensado de su actuación, no obstante, nunca estuvo en su ánimo, el influir indebidamente en el proceso criminal seguido contra el señor Pérez Morales; que en consideración a la forma en que se desarrollaron los acontecimientos, su proceder fue un gesto de candidez y generosidad, ocurrido cuando la sesión concluyó y nunca dirigido a la persona de la Honorable Juez; que sentía profundamente lo incomprendido de su acción, pero su proceder no fue dirigido a arrojar dudas sobre la imparcialidad de la Juez, y menos pretender minar la confianza pública en el sistema de justicia. Mediante Resolución de 14 de julio de 2006, la Juez Berrios Flores declaró No Ha Lugar a la reconsideración. De esta determinación no se recurrió, no obstante, la representación legal del señor Pérez Morales manifestar que recurriría, convirtiéndose posteriormente en final y firme.
Así las cosas, el señor Pérez Morales reiteró su renuncia ajuicio por jurado, señalándose la continuación de la vista por tribunal de derecho, para el 19 de marzo de 2007. En esa ocasión, 19 de marzo de 2007, luego de juramentada la prueba, los representantes legales del señor Pérez Morales, presentaron en corte abierta, un escrito titulado Memorando de Derecho en Apoyo a la Solicitud de Desestimación de la Acusación al Amparo de la Regla 64 (e) de las de Procedimiento Criminal. Por su parte, el Ministerio Público solicitó término para replicar el escrito presentado, señalándose el 14 de mayo de 2007, la discusión de la solicitud de desestimación y/o juicio. Por su parte, el 4 de abril de 2007, el Ministerio Público presentó su escrito de réplica, solicitando se declarare Sin Lugar la desestimación y se ordenaré la continuación de los procedimientos.
Así las cosas, luego de solicitarlo la representación legal del señor Pérez Morales, el tribunal determinó resolver la solicitud de desestimación y la réplica del Ministerio Público, por los escritos de las partes. Se señaló la vista en su fondo, para el 28 de agosto de 2007, la que fue posteriormente reseñalada para el 11 de octubre de 2007.
Finalmente, como hemos señalado, el 30 de noviembre de 2007, el tribunal emitió su Resolución, declarando No Ha Lugar la Moción al Amparo de la Regla 64(e) de las de Procedimiento Criminal presentada por el señor Pérez Morales, señalando el 3 de diciembre de 2007, para la continuación de los procedimientos. Posteriormente, según el conocimiento judicial que hemos tomado, la continuación de los procedimientos fue pautado para el 11 de abril de 2008, en la Sala 505.
Inconforme con la determinación, el señor Pérez Morales le imputa error al foro recurrido, al declarar No Ha Lugar su solicitud de desestimación de la acusación, es decir, negarle su protección constitucional contra la doble exposición.
*1074 III
La controversia ante nuestra consideración versa, sobre si es de aplicación la garantía constitucional contra la doble exposición, cuando un magistrado ha comenzado un juicio criminal por tribunal de derecho, inhibiéndose posteriormente, motu proprio, de seguir interviniendo, por entender que ciertas actuaciones del representante legal del imputado luego de concluida la sesión, constituyen conducta impropia de su parte que pudieran menoscabar la confianza pública en nuestro sistema judicial.
La Regla 76 de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 76, regula las causas de inhibición o recusación de un juez. Por su parte, la Regla 80 de ese cuerpo de Reglas prescribe la inhibición a instancia de un juez por los motivos señalados en la Regla 76 o por cualquier otra causa justificada. Transcribimos, respectivamente, las citadas reglas:

“Regla 76. INHIBICION; FUNDAMENTOS.

En cualquier proceso criminal, El Pueblo o la defensa podrán solicitar la inhibición del juez por cualquiera de los siguientes motivos:

(a) Que el juez haya sido fiscal o abogado de la defensa en el caso.

(b) Que el juez, sea testigo esencial en el caso.

(cj Que el juez haya presidido el juicio del mismo caso en un tribunal inferior.

(d) Que el juez tenga interés en el resultado del caso.

(e) Que el juez tenga relaciones de parentesco por consanguinidad o afinidad dentro del cuarto grado con el acusado, con la víctima del delito imputado, o con el abogado defensor o el fiscal.

(f) Que el juez, tenga opinión formada o prejuicio a favor o en contra de cualquiera de las partes, o haya prejuzgado el caso.

(g) Que el juez, haya actuado como magistrado a los fines de expedir la orden de arresto o de citación o a los fines de determinar causa probable en la vista preliminar.

REGLA 80. INHIBICIÓN A INSTANCIA PROPIA

Nada de lo dispuesto en estas reglas impedirá a un juez inhibirse a instancia propia por los motivos señalados en la Regla 76 o por cualquier otra causa justificada.” (Énfasis nuestro)
En el Preámbulo de los Cánones de Ética ludicial de Puerto Rico de 5 de abril de 2005, efectivos desde el 5 de octubre de ese año, 4 L.P.R.A. Ap. IV-B (“Cánones de Etica Judicial”), se establece que los cánones son normas mínimas de conducta que deben cumplir celosamente quienes tienen la encomienda de impartir justicia. Añade, además, que están diseñados para guiar a las juezas y a los jueces en el desempeño de sus cargos judiciales y sirven de estructura para la reglamentación de la conducta judicial. Pretenden, de manera prioritaria, fortalecer la independencia judicial como pilar de la sociedad democrática. Además, están encaminados a promover la confianza de la ciudadanía en su sistema de justicia, al requerir de las juezas y los jueces la más estricta adhesión a principios éticos en el manejo de sus asuntos personales, financieros y extrajudiciales. Por último, los Cánones de Ética Judicial habrán de garantizar el eficiente desempeño de las juezas y los jueces, al estimularlos a ser laboriosos, imparciales, prudentes, serenos, sensibles, estudiosos continuos del Derecho y cuidadosos en la interpretación de la ley, y al instarlos a procurar la solución armoniosa de las disputas que son *1075 sometidas a su consideración.
La imparcialidad con la cual los jueces deben proceder es de tan gran importancia que se requiere que cuando existan circunstancias que tiendan a minar la confianza pública en el sistema de justicia, así como razonablemente arrojar dudas sobre la imparcialidad para adjudicar. Cánones 20 (i) de los Cánones de Ética Judicial, 4 L.P.R.A. Ap. IV-B, C. 20.
El Canon 20 (i) de los Cánones de Ética Judicial, dispone, en lo pertinente, como sigue:

“Canon 20. Limitaciones; inhibición

Las juezas y los jueces entenderán y adjudicarán los asuntos que se les asignen, salvo aquéllos en los que la ley requiera su inhibición y en cualesquiera de los casos siguientes, pero sin limitarse a éstos:

(a)....

(i) por cualquier otra causa que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar o que tienda a minar la confianza pública en el sistema de justicia.

Las juezas y los jueces deberán inhibirse tan pronto conozcan de la causa de inhibición mediante resolución escrita en la que harán constar dicha causa, con su notificación a todas las partes. ”
Nuestro ordenamiento jurídico sostiene que la imparcialidad y objetividad del juez son necesarias no sólo en la realidad, sino también en la apariencia; no basta con que el juez sea imparcial y objetivo; es preciso que lo parezca. Lind v. Cruz, 160 D.P.R. 485, 492-493 (2003). Igualmente, se ha determinado que la imputación de parcialidad debe estar basada en hechos que produzcan duda razonable sobre la imparcialidad del juez o jueza hacia el litigante o sus abogados. Id. De este modo, se ha resuelto que los tribunales de justicia tienen el deber de velar que la balanza en la cual se pesan los derechos de todos los ciudadanos esté libre de sospechas, aun cuando las mismas sean infundadas. In re: Colton Fontán, 154 D.P.R. 776 (2001).
Cónsono con lo anterior, en su voto de inhibición en Andino Torres, Ex-Parte, 152 D.P.R. 509, 512-513 (2000), el Juez Asociado de nuestro Tribunal Supremo, Hon. Efraín Rivera Pérez, expresó que debe ser analizado desde el punto de vista de un "observador razonable, bien informado, con el conocimiento de todos los datos y circunstancias relevantes al caso, incluyendo aquéllas que son de conocimiento general, como las que no están a la luz pública. Se recomienda examinar: (1) los hechos pertinentes; (2) el récord del caso; y (3) la ley aplicable. La imputación de parcialidad debe ser basada en hechos que produzcan duda razonable sobre la imparcialidad del juez en la mente de una persona razonable, no desde el punto de vista del juez, los litigantes o sus abogados".
A la luz del derecho aplicable, procede evaluar los fundamentos de la Jueza Berrios Flores para inhibirse motu proprio de seguir participando en el caso comenzado. Debemos determinar si los fundamentos aducidos son suficientes para generar duda sobre su imparcialidad en la mente de una persona razonable o de un buen padre de familia, que la inhabiliten para seguir entendiendo en el caso del señor Pérez Morales.
Un juicio justo en un tribunal imparcial es un requisito básico del debido proceso de ley. Pueblo v. López Guzmán, 131 D.P.R. 867, 894 (1992). Por esta razón, en nuestro sistema judicial, la vigencia de apariencia de imparcialidad está enraizada en valores de jerarquía constitucional y en importantes principios éticos. En su vertiente ética, el requisito de imparcialidad se estableció expresamente en los cánones 8 y 20 de los Cánones de Ética Judicial de 2005, 4 L.P.R.A. Ap. IV-B, C. 8 y 20.
El Canon 8 de los Cánones de Ética Judicial de 2005, preceptúa que el juez o .jueza debe ser laborioso, *1076 prudente, sereno e imparcial y que sus funciones judiciales deberán ser realizadas con independencia de cualquier influencia ajena, de instigaciones, presiones, amenazas o interferencias, ya sean directas o indirectas, provenientes de cualquier fuente o por cualquier razón. Su conducta ha de excluir la posible apariencia de que son susceptibles de actuar por influencias de personas, grupos, partidos políticos o instituciones religiosas, por el clamor público, por consideraciones de popularidad o notoriedad, o por motivaciones impropias. Procede, además, la inhibición de un juez, cuando exista cualquier otra causa que pueda arrojar dudas sobre su imparcialidad para adjudicar, o que tienda a minar la confianza en el sistema judicial. Debe de notificar su inhibición tan pronto conozcan de la causa que los inhabilite para intervenir en el asunto mediante resolución escrita haciendo constar la causa de su inhibición, con notificación a todas las partes In re: Suárez Marchàn, 159 D.P.R. 724, 737 (2003).
Por otro lado, en torno a la protección constitucional contra la doble exposición, en Pueblo v. Martínez Torres, 126 D.P.R. 561, 567-569 (1990), nuestro Tribunal Supremo expresó:
Por mandato expreso de nuestra Constitución, en esta jurisdicción “nadie será puesto en riesgo de ser castigado dos veces por el mismo delito”. Art. 11, Sec. 11, Const. E.L.A., L.P.R.A., Tomo 1. A pesar de que la Constitución en materia de derechos fundamentales se aplica ex propio vigore, sin necesidad de que existan leyes habilitadoras, la protección constitucional contra la doble exposición ha sido recogida por nuestro ordenamiento procesal criminal. Así, el Art. 6 del Código de Enjuiciamiento Criminal de 1935 (34 L.P.R.A. § 6) establece claramente que “¡njinguna persona podrá ser procesada [por] segunda vez por un delito público, después de haber sido ya condenada o absuelta por el mismo delito". Por su parte, más recientemente, las Reglas de Procedimiento Criminal también recogen esta garantía de protección a los acusados. 34 L.P.R.A., R. 64(e). La Regla 64(e) de Procedimiento Criminal dispone lo siguiente:

“REGLA 64. FUNDAMENTOS DE LA MOCIÓN PARA DESESTIMAR

La moción para desestimar la acusación o la denuncia, o cualquier cargo de las mismas, sólo podrá basarse en uno o más de los siguientes fundamentos:

(e) Que el acusado ha sido convicto, o ha estado expuesto a serlo, o ha sido absuelto del delito que se le imputa. Si la moción para desestimar se basare en este fundamento, la misma expresará el nombre bajo el cual el acusado fue convicto, expuesto a convicción o absuelto, y la fecha, tribunal y lugar de convicción, exposición o absolución. La moción para desestimar podrá presentarse por cualquier acusado que hubiere sido absuelto por los méritos del caso, no obstante haber existido cualquier defecto en la acusación o denuncia. ”

Para poder levantar la defensa de doble exposición bajo la Regla 64(e) de Procedimiento Criminal, es necesario que se den los requisitos siguientes: “1) Que se haya iniciado o celebrado un primer juicio: a) en un tribunal con jurisdicción, b) bajo un pliego acusatorio válido, [y] c) por el mismo delito por el que se le acusa en el segundo juicio o por uno subsumido, por el cual pudo haber resultado convicto en el primer juicio....2) Basta que el juicio haya comenzado, o sea, que la persona quede expuesta. En casos por jurado, el juicio comienza al tomársele el juramento definitivo [al jurado] para oficiar en la causa; en casos por tribunal de derecho, al tomársele el juramento al primer testigo”. D. Nevares-Muñiz, Sumario de derecho procesal penal puertorriqueño, 3ra ed. rev.. Hato Rey, Ed. Inst. Desarrollo del Derecho, 1989, pág. 113.
Esta garantía constitucional cobra vigencia ante una variedad de situaciones. La misma es aplicable cuando se comienza un segundo proceso por el mismo delito una vez ha recaído absolución en el primero o cuando se comienza un segundo proceso por el mismo delito luego de una convicción en el primer proceso. La razón de ser de esta protección radica en la concepción de que al Estado, con todos sus recursos y poder, no se le debe permitir que intente en repetidas ocasiones lograr la convicción de una persona por un alegado delito. De permitirse, *1077 además de aumentar la posibilidad de que el acusado aun siendo inocente pueda ser encontrado culpable, colocaría a dicha persona en un estado de incertidumbre, obligándolo a vivir ansioso e inseguro. Además, la cláusula de doble exposición también confiere protección contra un reprocesamiento cuando el juicio previo ha terminado sin que haya habido convicción o absolución. Esto se hace para evitar que el Estado tome ventaja sobre lo aprendido en el primer juicio en cuanto a la fortaleza del caso de la defensa y las debilidades de su propio caso. Esta cláusula también evita que un mismo delito sea castigado más de una vez. (Citas omitidas.) Véase además: Pueblo v. Santiago, 160 D.P.R. 618, 626-629 (2003).
En resumen, la protección contra múltiples procesos, doble exposición o cosa juzgada, pretende evitar la persecución y hostigamiento de una persona a través de la celebración de más de un proceso penal. González, v. Tribunal Superior, 100 D.P.R. 136, 140 (1971). Véase además: Pueblo v. Santiago, 160 D.P.R 620, 626-629 (2003).
Como hemos expresado, en la discusión de la solicitud de la moción de desestimación, compareció el señor Pérez Morales, representado por el licenciado Lugo Irizarry y el licenciado Aguayo; el Ministerio Público estuvo representado por la Fiscal Ada Torres Pérez, quien indicó que el Fiscal Flores Bermúdez expuso la posición del Ministerio Público a la moción de desestimación, mediante escrito. Por su parte, la representación del señor Pérez Morales expresó no tener objeción a que la controversia se resolviera en consideración a los escritos presentados, accediendo el Tribunal a lo solicitado. La vista en su fondo fue señalada para el 28 de agosto de 2007, siendo reseñalada por acuerdo entre los representantes del señor Pérez Morales, licenciados Irizarry y Aguayo; y el Ministerio Público, por el Fiscal Ernesto Quesada Ojeda, para el 11 de octubre de 2007, en consideración a que el señor Pérez Morales no compareció por problemas de transportación.
El 11 de octubre de 2007, fecha de la vista del caso en su fondo, compareció el señor Pérez Morales asistido de sus representantes, licenciados Lugo Irizarry y Aguayo; y el Ministerio Público por la Fiscal Carolina Arcelay. El Tribunal hizo constar que no se había notificado la decisión en cuanto a la solicitud de desestimación presentada por la defensa y la réplica del Ministerio Público a esa solicitud, por lo cual señaló la vista en su fondo para el 3 de diciembre de 2007.
La representación del señor Pérez Morales planteó en su Memorando de Derecho en Apoyo a su Solicitud de Desestimación al Amparo de la Regla 64(e) de Procedimiento Criminal, que luego de presentada la prueba del Ministerio Público y el tribunal haber concluido la sesión, se suscitó una situación en la que uno de los representantes legales del señor Pérez Morales, el licenciado Lugo Irizarry, intentó repartir unas fracciones de un billete de lotería que había comprado, entre los funcionarios de sala, incluyendo al Fiscal, advirtiéndole de inmediato la Juez Berrios Flores, que eso no podía hacerse, abandonado éste la sala en esos instantes. Posteriormente, la Juez expresó su preocupación a otros de los abogados de defensa, quienes en conjunto con el Fiscal, se reunieron con la Juez Berrios Flores, procediendo el licenciado Lugo Irizarry a excusarse con la Juez Berrios Flores y el Fiscal. En el próximo señalamiento, lá Juez Berrios Flores informó su determinación de inhibirse de continuar interviniendo en el caso. La representación del señor Pérez Morales argüyó, además, que la inhibición de la Juez Berrios Flores impedía que éste fuere procesado nuevamente por el mismo delito, por estar protegido por la garantía constitucional contra la doble exposición.
Por su parte, el Ministerio Público replicó a la desestimación del señor Pérez Morales. El 30 de noviembre de 2007, luego de examinar y analizar el trasfondo fáctico y procesal del caso y las posiciones de las partes expuestas en sus escritos, la Juez Otero Ferreiras emitió la Resolución objeto del recurso.
La Sección 11 dEl Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico contiene el mandato expreso de que “nadie será puesto en riesgo de ser castigado dos (2) veces por el mismo delito”. Artículo II, Sección II, 1 L.P.R.A.; Pueblo v. Martínez Torres, 126 D.P.R. 561 (1990); Pueblo v. Castro García, 120 D.P.R. 740 (1988); Lugo Figueroa v. Tribunal, 99 D.P.R. 244, 247 (1970); Pueblo v. Rivera Ramos, 88 D.P. *1078 R. 612 (1963). De igual forma, la Quinta Enmienda de la Constitución de los Estados Unidos dispone en lo pertinente que; “no person shall be subject for the same offense to be twice put in jeopardy of life or limb”. Benton v. Maryland, 396 U.S. 784 (1969).
La garantía constitucional contra la doble exposición protege al ciudadano en cuatro instancias; a saber: (a) contra ulterior exposición tras absolución por la misma ofensa; (b) contra ulterior exposición tras convicción por la misma ofensa; (c) contra ulterior exposición tras exposición anterior por la misma ofensa (tras haber comenzado el juicio, que no culminó ni en absolución ni convicción; (d) contra castigos múltiples por la misma ofensa. Ohio v. Johnson, 467 U.S. 493 (1980); Brown v. Ohio, 432 U.S. 161 (1977); North Carolina v. Pearce, 395 U. S. 711 (1969); Wade v. Hunter, 336 U. S. 684 (1949). (Énfasis Nuestro).
El propósito de esta disposición constitucional, como hemos mencionado, es evitar que el Estado, con todos sus recursos y poderes, abuse de su autoridad y hostigue a un ciudadano con múltiples procedimientos intentando conseguir su convicción por la comisión de una misma conducta delictiva. Por otro lado, evita que el Estado tenga una segunda oportunidad para presentar prueba y tome ventaja sobre lo aprendido en el primer juicio en cuanto a las fortalezas del caso de la defensa y las debilidades de su propio caso. Plard v. Tribunal, 101 D.P.R. 444 (1973); United States v. Di Francesco, 449 U. S. 117 (1980); Burks v. United States, 437 U. S. 1 (1978); Green v. United Status, 355 U. S. 184 (1957). O. E. Resumil, Práctica Jurídica de Puerto Rico: Derecho Procesal Penal, New Hampshire, Ed. Butterworth Legal Publishers, 1993, R. 2, a la pág. 285.
Esta protección constitucional, como hemos expresado, ha sido enmarcada en nuestro ordenamiento procesal vigente en las disposiciones de la Regla 64(e) de Procedimiento Criminal. 34 LPRA Ap. II, R. 64(e). Para poder levantar la defensa contra la doble exposición bajo la referida Regla 64(e), es necesario que se cumplan los siguientes requisitos:
“Que se haya iniciado o celebrado un primer juicio: a) en un tribunal con jurisdicción; b) bajo un pliego acusatorio válido; c) por el mismo delito por el que se le acusa en el segundo juicio o por uno subsumido, por el cual pudo haber resultado convicto en el primer juicio.” Dora Nevares Muñiz, Sumario de Derecho Procesal Penal Puertorriqueño, Hato Rey, 3ra. Ed. Rev., Instituto para el Desarrollo del Derecho, Inc., 1989, a la pág. 113.
La jurisprudencia, así como los tratadistas, han interpretado que la disposición constitucional ampara al acusado, si a los fines del proceso anterior había comenzado el juicio. Para determinar si un juicio ha comenzado, tenemos que tomar en consideración cómo se inicio el proceso, si por jurado o por tribunal de derecho. En el proceso ante jurado, el juicio se inicia cuando se toma juramento definitivo al panel de jurado. Pueblo v. Martínez Torres, supra; Downum v. United States, 372 U. S. 634 (1963). En un proceso por tribunal de derecho, el juicio se inicia cuando se le toma juramento al primer testigo. Basta que el juicio haya comenzado, para que la persona quede expuesta.” Serfass v. United States, 420 U.S. 377 (1975); Crist. v. Bretz, 437 U. S. 28 (1978). (Énfasis nuestro).
En el caso ante nuestra consideración, cuando la Juez Flores Berrios decidió inhibirse motu proprio, el juicio ante su consideración no había concluido, es decir, no había finalizado, estaba “inconcluso”. Los dos (2) criterios para justificar un juicio inconcluso, sin que tenga efecto de impedimento para un nuevo juicio son: (a) que el acusado solicitó o no se opuso a la conclusión del juicio; y que había necesidad manifiesta para el juicio inconcluso. (Énfasis nuestro.)
Cuando el acusado solicita o no se opone a la terminación del juicio, renuncia a la protección contra ulterior proceso, salvo conducta deliberada del Ministerio Público. No obstante, si la defensa se oponía a la terminación del juicio, el acusado estaría protegido contra ulterior proceso bajo la Cláusula de Doble Exposición, salvo circunstancias extraordinarias, imponiéndosele al gobierno la carga de establecer la “necesidad manifiesta” (manifest necessity) de la terminación del juicio sin consentimiento de la defensa. United States v. *1079 Jorn, 400 U. S. 470 (1971); Downum v. United States, 372 U. S. 734 (1963).
En Illinois v. Somerville, 410 U. S. 458 (1973), el Tribunal Supremo de Estados Unidos flexibilizó el examen judicial sobre la “necesidad manifiesta”, y fue suficiente establecer que “the trial court reasonably have concluded that the “ends of Justice” would be defeated by having allowed the trial to continue.” “El tribunal de primera instancia ha llegado a la conclusión razonable de que los propósitos de la Justicia ” serían derrotados por haber permitido que el juicio continuara. ” Illinois v. Somerville, supra. (Traducción del tribunal de instancia).
Posteriormente, en Arizona v. Washington, 434 U. S. 497 (1978), el Tribunal Supremo de los Estados Unidos disolvió al jurado por manifestaciones impropias del abogado de defensa en su informe inicial al jurado, lo que a juicio del tribunal de instancia impediría al jurado un veredicto imparcial, resolviéndose que había una necesidad de disolver el jurado, expresando lo siguiente:

“In a strict literal sense, the mistrial was not “necessity”. Nevertheless, the overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge’s evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the import comment. ”

En el presente caso, la Juez Berrios Flores entendió que había suficiente base razonable para creer que los fines de la justicia quedaban mejor servidos con la terminación inconclusa del juicio, sin la anuencia del señor Pérez Morales por estar presente una “necesidad manifiesta” para inhibirse de concluir con el juicio, provocada por la conducta de su representante lega, el licenciado Lugo Irizarry. A esos fines, la Juez Berrios Flores aplicó los conceptos que nuestro más Alto Foro expuso en In re: Castro Colón, 155 D.P.R. 110, 121 (2001):
“[Pjor la posición que ocupa un magistrado en la comunidad, sus actuaciones deben responder a normas que estimulen la confianza y el respeto de sus conciudadanos y que alejen, en todo momento, la más leve sospecha de que en sus actuaciones intervienen otras influencias que no sean estrictamente los méritos de la causa que juzga... Los jueces tienen la obligación de observar una conducta que tienda a conservar la confianza y el respeto que requiere el sistema judicial, especialmente en los Tribunales de Distrito, que es donde los ciudadanos tienen un contacto más estrecho con la administración de la justicia. ” In re: Liceaga, 82, D.P.R. 252, 259-260(1961).
El mejor resumen de lo que constituye “necesidad manifiesta” es la expresada por el Tribunal Supremo de Estados Unidos en el caso de Illinois v. Somerville, supra:

“A trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial. If an error would make reversal on appeal a certainty, it would not serve “the ends of public justice ” to require that the Government proceed with its proof when, if it succeeded before the jury, it would automatically be stripped of that success by an appellate court. ”

Tomando en consideración esas circunstancias extraordinarias que la jurisprudencia de Estados Unidos ha establecido como “necesidad manifiesta” (manifest necessity), nuestro más alto foro judicial reafirmó la trascendencia de la garantía constitucional enmarcada en la Sección 11 de nuestra Carta de Derechos, y en el caso Pueblo v. Arteaga Torres, 93 D.P.R. 148, 151 (1966), consignó lo siguiente:
“El hecho de que al disolver un jurado antes del veredicto, sin que sea a petición o con la aquiescencia del acusado, el Tribunal actúe bajo los supuestos del apartado (d) de la Regla 144, no establece per se la validez de un segundo proceso por el mismo delito. El fundamento de lo dicho es que existe la garantía de orden *1080 constitucional que protege al acusado no contra ser castigado dos veces, sino contra ser puesto en riesgo de ser castigado dos veces por el mismo delito. ” Citas Omitidas.
Y a continuación expresó lo que a continuación transcribimos en relación a la “necesidad manifiesta”.
Por lo tanto, la cuestión ante nos debe afrontarse no sólo a la luz de la autoridad permisible de la Regla 144, sino satisfaciendo además aquellas normas constitucionales que rigen la materia y que también harían permisible o no un segundo proceso sin que se violara la garantía. Puede decirse, en síntesis, de esas normas que cuando ocurran circunstancias en que los fines de una justicia sustancia! no pueden lograrse y exista una manifiesta necesidad de así hacerlo, de modo que no se derroten los mejores fines de la justicia, un juicio puede descontinuarse y disolverse el jurado sin el consentimiento del acusado o aun ante su objeción, sin que por ese sólo hecho un segundo enjuiciamiento por el mismo delito quede al margen de la garantía constitucional. Es norma complementaria de lo anterior que la descontinuación de un juicio en esas circunstancias debe ser producto de una sana y juiciosa discreción; la facultad debe ejercitarse con la mayor cautela, por consideraciones obvias de peso, y ante una “necesidad manifiesta” de así hacerlo. United States v. Tateo, 377 U.S. 463; Gori v. United States, 367 U.S. 364; Wade v. Hunter, 336 U.S. 684; United States v. Pérez, 9 Wheat, 579
La garantía constitucional contra la doble exposición no es absoluta ni automática; debe atenderse el interés que tiene la sociedad de que se le brinde al ministerio público una oportunidad adecuada para procesar a aquellos que violan la ley y así impedir que la comisión de delitos quede impune. Pueblo v. Santiago Pérez, 160 D.P.R. 618 (2003); Ohio v. Johnson, 467 U. S. 493, 502 (1984); Arizona v. Washington, 434 U. S. 497, 509 (1978).
A esos fines, se han establecido algunas excepciones a la aplicación de la protección constitucional a saber:
“(a) Cuando la persona que resulta convicta en el primer juicio es quien procura y obtiene la anulación de la primera convicción por errores de derecho y el tribunal ordena la celebración de un nuevo juicio; (b) cuando el juicio ha comenzado ante un jurado y éste es disuelto conforme dispone la Regla 144 de Procedimiento Criminal; (c) cuando el acusado con su actuación en el juicio consiente a una segunda exposición; (d) cuando el Fiscal intencionalmente provoca que la defensa solicite la disolución del jurado, podría haber exposición anterior; (e) cuando se permite un nuevo juicio por inhabilidad del juez de conformidad con la Regla 186 (g), no habrá doble exposición; (f) cuando un magistrado comete error al resolver un “planteamiento técnico declinatorio de jurisdicción" en un juicio ya comenzado, no habrá doble exposición al resolverse el caso por el tribunal revisor, si la actuación de éste no obliga al acusado a someterse a un segundo juicio, pudiendo corregirse el error sin ulterior proceso o prueba; (g) tampoco hay exposición anterior cuando el tribunal apelativo devuelve un caso a instancia para resentenciar al convicto. ” D. Nevares Muñiz, Sumario de Derecho Procesal Penal Puertorriqueño, 8ta. Ed. 2007, a las págs. 138-139.
En el caso Oregon v. Kennedy, 456 U. S. 667 (1982), el Tribunal Supremo de los Estados Unidos estableció la doctrina de que para que se impida un nuevo proceso en obediencia a la cláusula constitucional de doble exposición (Enmiendas V y XIV), el mistrial no debe ser el resultado de una conducta intencional del fiscal o del juez con el propósito de obligar a la defensa a solicitarlo. Este caso limitó la doctrina de United States v. Dinitz, 456 U. S. 600 (1976), al decir, en las págs. 675-676:
“Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent protections afforded by the Double Jeopardy Clause. A defendant's motion for a mistrial constitutes” “a deliberate or innocence determined before the first trier of fact." United States v. Scott, 437 U. S. 82 (1978). “Where prosecutorial error even of a degree sufficient to-warrant a mistrial has occurred, [t]he important consideration, for purposes of the Double Jeopardy Clause, is the defendant retain primary control over the course to be followed in the event of such error. ” United States v. Dinitz, supra at 609. “Only where the governmental conduct in question is intended to “goad the *1081 defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion. ” (Enfasis nuestro.)
Más adelante, en la pág. 679, señaló el Tribunal.

“...We do not by this opinion lay down a flan rule that where a defendant in a criminal trial successfully moves for a mistrial, he may not thereafter invoke the bar of double jeopardy against a second trial. But we do hold that the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistral. ”

A tenor con el inciso (c) (Cuando el acusado con su actuación en el juicio consiente a una segunda exposición) de las excepciones a la aplicación de la protección constitucional contra la doble exposición, puntualizamos, al igual que lo hizo instancia, que las actuaciones por parte del representante de la defensa, fueron la punta de lanza que obligó a la Juez Berrios Flores a inhibirse acertadamente de continuar presidiendo el proceso, ante la necesidad sabia de adoptar la medida menos perjudicial y más acertada para la administración de la justicia.
La apariencia de conducta impropia de un abogado puede resultar perniciosa, minando el respeto de la ciudadanía por sus instituciones de justicia y la confianza de los clientes en sus abogados. Asimismo, puede tener un efecto dañino sobre la imagen, confianza y respeto del público por su gobierno, como la verdadera impropiedad ética. Esta apariencia impropia tiene que sostenerse sobre la impresión que se le da al público de la violación efectiva de alguno de los Cánones de Ética Profesional. In re: Avilés, Tosado, 157 D.P.R. 867, 884 (2002).
La representación legal del señor Pérez Morales arguye en su escrito, que los hechos acaecidos en este caso no ocurrieron dentro del caso. Como hemos expresado, el incidente ocurrió al finalizar los trabajos en el caso, estando presentes todavía en sala, testigos de cargo del caso y otros funcionarios del Tribunal. Los entornos del Tribunal constituyen el recinto donde se imparte la justicia. No obstante, la justicia debe ser inmaculada, no sólo en su realidad interior, sino también en su apariencia externa, principio encarnado en diferentes disposiciones del Código de Ética Profesional. La prohibición establecida en el Canon 11 de Ética Profesional, respecto a las influencias o presiones indebidas hacia jueces, debe interpretarse a luz de lo anterior como que prohíbe también cualquier actuación que diese lugar a una apariencia de indebidas influencias. En nuestro sistema de gobierno, "donde la voluntad del pueblo es la fuente del poder público [y] donde el orden público está subordinado a los derechos del hombre, la confianza del pueblo en su sistema de justicia es de vital importancia para el mantenimiento de la armonía social y esto le impone a cada abogado, en cada instante de su gestión profesional, la más cuidadosa auto-disciplina, de forma que evite siempre aun la más leve apariencia de actuaciones indebidas’’ In re: Rodríguez v. Torres, 104 D.P.R. 758, 766 (1976).
No existe duda sobre el objetivo que persiguen nuestros Cánones de Ética Judicial, a los efectos de que se mantenga "... la fe de la ciudadanía puertorriqueña en el sistema judicial puertorriqueño y, por ende, en la justicia que se dispense en nuestra tierra”. Opinión concurrente del señor Juez, Hon. Rebollo López, en Sterzinger v. Candelario de Efron, 134 D.P.R. 961 (1966). Luego de citar el Canon I, se dijo en esta opinión lo siguiente:

“Así, el respeto y la confianza en la judicatura que tenga la ciudadanía depende, de manera principalísima, de la conducta que observen los jueces; los cuales en el desempeño de sus funciones deben ser laboriosos, prudentes, y, sobre todo, imparciales. ”

Para ampliar a la conclusión del caso de autos basta añadir lo que expuso al respecto nuestro Tribunal *1082 Supremo en In re: Campoamor Redìn, 150 D.P.R. 138 (2000):

“El Canon XI establece que el Juez no solamente ha. de ser imparcial, sino que su conducta ha de excluir toda posible apariencia de que se está actuando a base de influencias o motivaciones impropias.

Los cánones de ética judicial XI Y XII de 1977 según enmendados corresponden a los cánones (8) y (20) del 2005.”

Las providencias adoptadas por la Juez Berrios Flores en el caso de autos iban encaminadas precisamente a restablecer el balance y salvaguardar los derechos del señor Pérez Morales a los que alude su representante en su escrito, así como el deber encomiable de impartir justicia y que la defensa con sus actuaciones había maculado. Ciertamente, la defensa del señor Pérez Morales no puede descansar en el incidente provocado por el desatino manifiesto de uno de sus representantes y tomar preeminencia sobre el curso de acción y determinación de la Juez Berrios Flores, para alegar la lesión de los derechos constitucionales de su representado y posteriormente solicitar la desestimación del caso, al amparo de la garantía constitucional contra la doble exposición. La terminación inconclusa del juicio en el caso ante nuestra consideración no obedeció a consideraciones fútiles e insignificantes, ni a un pequeño desliz de licenciado Lugo Irizarry como se señala en su Memorando de Derecho, sino a reflexiones de peso ante una necesidad manifiesta para inhibirse de continuar presidiendo los procedimientos del caso y que no pueden ser soslayadas de ninguna manera.
Aun cuando la protección constitucional opera ex proprio vigore, nuestro Tribunal Supremo ha establecido que un imputado de delito no tiene derecho a utilizar la defensa contra la doble exposición como una espada para impedir el procesamiento criminal. Pueblo v. Santiago, supra; Ohio v. Johnson, supra, a la pág. 502. En el caso de autos, el señor Pérez Morales no puede esgrimir la defensa contra la doble exposición cuando las actuaciones del licenciado Lugo Irizarry provocaron y motivaron la inhibición de la Juez Berrios Flores.
Resolvemos que bajo los hechos particulares acaecidos en el caso de autos, atendiendo el balance adecuado entre los derechos del señor Pérez Morales y los de nuestra sociedad, éste está impedido de reclamar la protección constitucional contra la doble exposición.
En mérito a lo expuesto, denegamos la expedición del auto de certiorari solicitado por el señor Pérez Morales. Devolvemos el expediente al Tribunal de Primera Instancia, Sala de Ponce, para la continuación de los procedimientos.
Notifíquese inmediatamente por telefax y correo ordinario.
Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones